Diane **CHAPMAN**, Petitioner

v.

**UNEMPLOYMENT COMPENSATION BOARD OF REVIEW,** Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Jan. 14, 2011.

Decided April 25, 2011.

Deirdre J. Kamber, Center Valley, for petitioner.

Jonathan D. Koltash, Assistant Counsel, Harrisburg, for respondent.

BEFORE: COHN JUBELIRER, Judge, and SIMPSON, Judge, and KELLEY, Senior Judge.

OPINION BY Senior Judge KELLEY.

Diane Chapman (Claimant) petitions for review of the order of the Unemployment Compensation Board of Review (Board) reversing the decision of a Referee, and determining that Claimant is ineligible for unemployment compensation benefits pursuant to Section 402(e) of the Unemployment Compensation Law (Law).[1] We affirm.

Claimant filed a claim for unemployment compensation benefits upon the termination of her employment as a registered nurse with Lifequest Nursing Center (Employer). The Allentown UC Service Center representative concluded that Claimant had been discharged for reasons that constitute willful misconduct under Section 402(e) of the Law based upon her use of a cell phone while working in violation of Employer's work rule prohibiting such cell phone use. As a result, unemployment compensation benefits were denied.

Claimant appealed this determination and a hearing was conducted before a Referee. *See* N.T. 2/16/10[2] at 1–34. On May 7, 2010, the Referee issued a decision disposing of the appeal in which she determined that Claimant had been discharged for reasons that do not constitute willful misconduct under Section 402(e) of the

Law. As a result, the Referee issued an order reversing the Service Center's determination, and granting Claimant unemployment compensation benefits.

On May 24, 2010, Employer filed an appeal of the Referee's decision with the Board. On July 27, 2010, the Board issued a decision in which it made the following relevant findings of fact: (1) Employer has a progressive disciplinary policy, however, Employer may immediately discharge an employee who engages in conduct that could cause a life threatening situation; (2) Employer has a policy prohibiting the use of cell phones while on duty; (3) Claimant was aware of this policy as she had been warned for violating the policy on June 2, 2009; (4) on November 14, 2009, Claimant used her personal cell phone to post comments on her Facebook page about a co-worker who had accidentally soiled her pants at work; (5) Employer discovered the comments and investigated Claimant's work activities at the time the comments were posted; (6) Employer's records indicate that Claimant had been distributing medications to patients while the comments were posted; (7) Employer confronted Claimant and she admitted posting the comments using her cell phone while on duty, and did not assert that she was on a break when the comments were posted; and (8) Employer discharged Claimant for engaging in conduct that could cause a life threatening situation by using her cell phone while distributing patient medications. Board Decision at 1–2.

---

1. Act of December 5, 1936, Second Ex.Sess. P.L. (1937) 2897, *as amended*, 43 P.S. § 802(e). Section 402(e) of the Law provides, in pertinent part:

   An employe shall be ineligible for compensation for any week

   \* \* \*

   (e) In which his unemployment is due to his discharge or temporary suspension

from work for willful misconduct connected with his work, irrespective of whether or not such work is "employment" as defined in this act.

2. "N.T. 2/16/10" refers to the transcript of the hearing conducted before the Referee on February 16, 2010.

Based on the foregoing, the Board concluded:

The claimant was aware of the employer's policy prohibiting the use of cell phones while on duty, yet she violated that policy despite having been previously warned for doing so. The employer credibly explained that it may advance through the progressive disciplinary policy and immediately discharge where the employee engages in conduct that could create a life threatening situation. The Board further credits the employer's testimony that the claimant admitted to using her cell phone while on duty, and that she made no verbal assertion of being on a break at the time the comments were posted. The employer's documentation further corroborates that the claimant was actively engaged in the distribution of patient medications while using her cell phone for a menial purpose. The claimant's distraction with the cell phone certainly could have placed patients at risk of serious harm. As such, the Board concludes that the employer has met its burden of proving willful misconduct in connection with the claimant's discharge. The Board discredits the claimant's assertion that she was on a break when she used her cell phone. Accordingly, she has not justified her conduct.

Board Decision at 2–3. Accordingly, the Board issued an order reversing the Referee's decision and denying Claimant unemployment compensation benefits. *Id.* at 3. Claimant then filed the instant petition for review.[3]

In this appeal, Claimant contends the Board erred as a matter of law in determining that Employer had sustained its burden of proving that Claimant was ineligible for compensation benefits under Section 402(e) of the Law. More specifically, Claimant asserts [4]: (1) there is not sufficient substantial evidence demonstrating the existence of a work policy prohibiting the use of cell phones while on duty, that Claimant was aware of such a policy, or that she violated the policy; (2) the Board erred in relying on Employer's illegal search of her Facebook page; and (3) the Board erred in overriding the credibility determinations made by the Referee.

■■■■ As noted above, pursuant to Section 402(e) of the Law, an employee is ineligible for unemployment compensation benefits when she has been discharged from work for willful misconduct connected with her work. *Guthrie v. Unemployment Compensation Board of Review*, 738 A.2d 518 (Pa.Cmwlth.1999). The burden of proving willful misconduct rests with the employer. *Id.* Whether an employee's conduct constitutes willful misconduct is a question of law subject to this Court's review. *Id.*

Although willful misconduct is not defined by statute, it has been described as: (1) the wanton and willful disregard of the employer's interests; (2) the deliberate violation of rules; (3) the disregard of standards of behavior that an employer can rightfully expect from his employee; or (4) negligence which manifests culpability, wrongful intent, evil design, or intentional and substantial disregard for the employ-

3. This Court's scope of review in an unemployment compensation appeal is limited to determining whether an error of law was committed, whether constitutional rights were violated, or whether necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency

Law, 2 Pa.C.S. § 704; *Hercules, Inc. v. Unemployment Compensation Board of Review*, 146 Pa.Cmwlth. 77, 604 A.2d 1159 (1992).

4. In the interest of clarity, we consolidate and reorder the claims raised by Claimant in this appeal.

er's interests or the employee's duties and obligations. *Id.* (citing *Kentucky Fried Chicken of Altoona, Inc. v. Unemployment Compensation Board of Review*, 10 Pa. Cmwlth. 90, 309 A.2d 165, 168–169 (1973)).

■ Thus, a violation of an employer's work rules and policies may constitute willful misconduct. *Id.* An employer must establish the existence of the work rule and its violation by the employee. *Id.* If the employer proves the existence of the rule, the reasonableness of the rule, and the fact of its violation, the burden of proof shifts to the employee to prove that she had good cause for her actions. *Id.* The employee establishes good cause where her actions are justified or reasonable under the circumstances. *Id.*

■ In addition, it is well settled that the Board is the ultimate finder of fact in unemployment compensation proceedings. *Peak v. Unemployment Compensation Board of Review*, 509 Pa. 267, 501 A.2d 1383 (1985); *Chamoun v. Unemployment Compensation Board of Review*, 116 Pa. Cmwlth. 499, 542 A.2d 207 (1988). Thus, issues of credibility are for the Board which may either accept or reject a witness' testimony whether or not it is corroborated by other evidence of record. Peak;

*Chamoun.* Findings of fact are conclusive upon review provided that the record, taken as a whole, contains substantial evidence to support the findings. *Taylor v. Unemployment Compensation Board of Review*, 474 Pa. 351, 378 A.2d 829 (1977). This Court must examine the evidence in the light most favorable to the party who prevailed before the Board, and to give that party the benefit of all inferences that can be logically and reasonably drawn from the testimony. *Id.*

■ Claimant first contends that there is not sufficient evidence demonstrating the existence of a work policy prohibiting the use of cell phones while on duty, or that she was aware of it, and that she had not violated the policy because she had posted the comments on her Facebook page during a break. However, when viewed in a light most favorable to Employer, our review of the certified record in this case demonstrates that there is substantial competent evidence supporting the Board's findings regarding the existence of Employer's policy prohibiting the use of cell phones while on duty, the reasonableness of the policy, Claimant's awareness of the policy, and the fact of its violation. *See* N.T. 2/16/10 at 5–8 [5], 19–20.[6] More

5. Employer's Human Resource Administrator, Sharon Breish, testified in pertinent part, as follows:

ET Could you explain to the Referee the reason as detailed in that letter and the reason you provided [Claimant] for her termination?
EW1 Yes, we had—[Claimant] and I had met on Wednesday, November 18th, to discuss an incident that had occurred on Saturday, November 14th. When we met I provided [Claimant] with copies of a Facebook page, and that would be Exhibits # 6 and 6A, and [Employer's Director of Nursing, Joy Herzog] was also present during our meeting and I presented these to [Claimant] and I said these represent copies of your Facebook page from Saturday and

Sunday and she gave—I handed those to her and I gave her an opportunity to review those and then we discussed that this was a situation that. . . .
ET Did [Claimant] agree that they were her—in fact—in fact they were her postings to her—that she made to her Facebook page?
EW1 Yeah she did.
ET Okay.
EW1 She was familiar with them. She reviewed them and agreed that these were a part of her Facebook page.
ET And although not going into detail, what were the substance of those postings that were made by [Claimant]?
EW1 Quickly, a coworker had had a bathroom accident and had soiled her pants and [Claimant] was including the details of that

incident on her Facebook page via the Internet.

ET Okay.

EW1 So we talked about the fact that these were in fact her Facebook pages and then I asked [Claimant] if she was aware that posting things on the Internet would be accessible to many people and she said that she was aware of that but this Facebook was new to her but she didn't recognize that she would be able to make copies of these pages.

\* \* \*

R [G]o ahead.

EW1 Okay. And so we talked about the Facebook page, we talked about the incident, we talked about the fact that it was very embarrassing information. And then I asked [Claimant], were you in your car at the time you completed these Facebook submissions, no, she was not in the car. Were you in the building, were you in Lifequest Nursing Center when you made these submissions, yes. Where were you, I was in the nurse's station near the employee break room. So you were on duty, yes. You were passing meds and giving resident treatments while you were doing this, yes. . . . So again, I confirmed that in fact she was on duty, yes, were you aware of the fact that while using your cell phone while on duty violates company policy, yes. It also violates the Nurse Practices Act because you're giving medications while you're doing cell phone work, yes.

ET At anytime during—you had this—when you had this conversation with [Claimant] did she indicate that she was on break?

EW1 No.

ET Okay. Go on.

EW1 No, she told me she was on duty. I said, okay, so what we need to do—after I got her statement what we need to do is I need to do some more investigation. . . .

ET Did you subsequently then have another meeting with [Claimant]?

EW1 Yes, we met on the 23rd. I reviewed everything again, all the details about the fact that she was on duty, that she was doing resident care, doing the cell phone, that she was aware of the policy. We also talked about the fact that nursing—nurses giving medications while doing other non-work related duties, you know, puts the residents at risk because you're giving medications and you're not concentrating on the meds and she understood all of that.

And then I told her that because she has had previous warnings about cell phone usage and it's in the corrective action—or discipline process, that we would be terminating her employment.

ET When you had that final meeting with her did she at that point ever inform you that she was on break at the time she was making these Facebook postings?

EW1 No.

ET Prior to the termination was [Claimant] warned regarding any violations of policy?

EW1 Yes.

ET And I'm referencing you now to documents that have been marked and entered into evidence as Service Center Exhibit 8, could you identify what that is for the Referee?

EW1 Yes, that's a written warning that was given on November the 12th, 2009, it was in regards to some absenteeism issues but it also denotes the June 2nd, 2009 written counseling for cell phone usage.

ET And what is that cell phone usage policy Ms. Breish?

EW1 You are not permitted to use your cell phone while you are on duty providing resident care.

ET Was that policy gone over with her at the time of this corrective action?

EW1 Yes.

ET And what's the date of this corrective action?

EW1 11/12/2009 and [Claimant] was also informed that any further infractions would be further corrective action up to and including termination and she did sign that.

ET Now you said that this was November the 12th of 2009 and what was the date of the incident that led to [Claimant's] termination?

EW1 November 14th.

ET I want to reference a document that's been marked and entered into evidence as Service Center Exhibit 9 and 9A, can you identify what that is for the Referee please?

EW1 Yes, that is a written warning that was presented to [Claimant] on June 2nd, 2009. There was several issues including not following facility policy regarding cell phone use.

ET And whose signature is on the second page of that document?

EW1 It's [Claimant's] and she wrote that she would follow all policies moving forward.

specifically, the testimony of Employer's Human Resource Administrator and Director of Nursing support the Board's findings in this regard. *Id. See also* Exhibit 8 "Counseling and Corrective Action Form", Exhibits 9, 9A "Written Counseling and Corrective Action Form", Certified Record Item No. 3 at 16, 17.

As noted above, the Board was free to credit the foregoing evidence regarding the violation of Employer's policy and to discredit evidence to the contrary. *Peak; Chamoun.* In addition, those findings are conclusive on appeal as they are supported by the foregoing substantial evidence. *Taylor.* As Employer satisfied its burden of proof in this regard, the burden then shifted to Claimant to establish good cause such that her actions were justified or reasonable under the circumstances. *Guthrie.*

In support of her burden, Claimant cites to evidence supporting her assertion that she was not aware of the policy and that her actions did not constitute willful misconduct. *See* Petitioner's Brief at 17–21. However, in its opinion, the Board specifi-

> ET Now I notice that on Exhibit # 8 checked off there is written warning, is that correct?
> EW1 Correct.
> ET And there is another I guess possible type of discipline that can take place and it says suspension.
> EW1 Yes.
> ET Why was it that [Claimant] was not suspended but terminated as a result of that final incident?
> EW1 When you have a nurse that has—is violating company policies as well as Nurse Practices Act and doing things that could cause a life threatening situation, we do have a policy here at Lifequest that there are times when we will term[inate] a registered nurse for placing residents at risk because as an employer we have the responsibility for the safety of all residents.

6. Employer's Director of Nursing, Joy Herzog, testified in pertinent part, as follows:
> ET Thank you. Ms. Herzog how did you become aware of the incident that led to [Claimant's] termination?
> EW2 Some of the nurses were talking in the hall about what they saw on Facebook page and so I asked one of them to open up their Facebook account and show me what they were talking about.
> ET And I'd like to reference Exhibit 6 and 6A, would this be copies of the account that you had seen?
> EW2 That is.
> ET What did you do upon receiving this information?
> EW2 I contacted Sharon Breish, the HR Director, and notified her what I had seen, so that she could initiate an investigation.

> ET Did you take any part in that investigation?
> EW2 Yes I did.
> ET And was part of that investigation interviewing [Claimant]?
> EW2 Yes it was.
> ET And could you explain to the Referee the substance of the interview with [Claimant] regarding this particular incident?
> EW2 We asked her where she was when she made these postings on her Facebook.
> ET Well first of all, did she admit that she made these postings?
> EW2 Yes she did.
> ET Okay. Did you show them to her?
> EW2 Yes.
> ET Okay. And where did she say first of all that she was when she made those postings?
> EW2 She told me that she was at the nurse's station when she made those postings.
> ET Did she say whether she was on break or on duty?
> EW2 She did not.
> ET Did she ever indicate to you during the course of that—was this the initial conversation you had with her?
> EW2 Yes.
> ET Were you also present at the termination meeting?
> EW2 Yes I was.
> ET And at either of those two times did [Claimant] ever indicate that she was on break when she made these postings?
> EW2 She didn't make that statement.
> R She did not?
> EW2 No.

cally stated, "[t]he Board discredits the claimant's assertion that she was on a break when she used her cell phone. Accordingly, she has not justified her conduct." Board Opinion at 3.

As noted above, the Board is the ultimate finder of fact in unemployment compensation proceedings. *Peak; Chamoun.* In addition, issues of credibility are for the Board which may either accept or reject a witness's testimony whether or not it is corroborated by other evidence of record. *Id.* Thus, the fact that there is evidence cited by Claimant in her appellate brief which contradicts the Board's determinations with respect to the violation of Employer's policy, and Claimant's purported good cause for the violation, this does not compel the conclusion that the Board's determinations should be reversed. *See, e.g., Tapco, Inc. v. Unemployment Compensation Board of Review,* 168 Pa.Cmwlth. 292, 650 A.2d 1106, 1108–1109 (1994) ("[T]he fact that Employer may have produced witnesses who gave a different version of events, or that Employer might view the testimony differently than the Board, is not grounds for reversal if substantial evidence supports the Board's Findings.").

In short, there is ample substantial competent evidence demonstrating the existence of Employer's policy prohibiting the use of cell phones while on duty, the reasonableness of the policy, Claimant's awareness of the policy, and the fact of its violation. In short, we will not accede to Claimant's request to revisit the Board's credibility determinations in this regard, and the Board did not err as a matter of law in determining that Claimant was ineligible for benefits pursuant to Section 402(e) of the Law by violating Employer's policy. *See, e.g., Pettyjohn v. Unemployment Compensation Board of Review,* 863 A.2d 162, 165 (Pa.Cmwlth.2004) ("The Board correctly argues that Claimant's conduct constituted willful misconduct because 'it is contrary to reasonable standards of behavior for an employee to use company property for personal activities without authorization, even absent a rule prohibiting such conduct.' Using computers for personal, non-work purposes after being instructed not to do so amounts to willful misconduct, and a lack of prior warnings 'is not a defense in willful misconduct cases' regarding admitted misconduct. The Court is compelled to agree with the Board. Claimant accessed the internet during working hours rather than during her personal breaks or lunch. Moreover, Claimant was aware of the policy prohibiting use of the internet for personal purposes except for designated times and requiring her to seek out more work from her supervisor if she was short on work. The Board therefore properly determined that Claimant violated a clearly established policy and that her behavior constituted willful misconduct. Accordingly, benefits were properly denied, and the order of the Board is affirmed.") (citations omitted).[7,8]

---

**7.** *See also Teasley v. Unemployment Compensation Board of Review,* 60 Pa.Cmwlth. 428, 431 A.2d 1155, 1157 (1981) ("In the instant case, the employer's representative testified before the referee that the claimant had been told, both individually and at staff meetings, that she was assigned specifically to the Eastern and Southern offices of WRO; and that she had been previously warned about not being at her assigned offices during work hours. Further testimony establishes that the claimant was not where she was supposed to be on the date in question, and that she failed to advise her employer of her whereabouts. We are satisfied that the preceding testimony supports the Board's conclusion that the employer has proved both the existence of a reasonable rule, and the fact that claimant violated the rule. Once the foregoing was established, the burden shifted to the appellant to establish good cause for her violation of the employer's rule. On the record before

■ Claimant next contends that the Board erred in relying on Employer's illegal search of her Facebook page. More specifically, Claimant asserts that Employer's access to her Facebook page violated her federal constitutional rights. As a result, Claimant submits that the Board erred in relying upon the purported contents of her Facebook pages in determining that she committed willful misconduct under Section 402(e) of the Law.

However, Claimant fails to set forth in her brief where this allegation of error was raised or preserved for our review as required by Pa.R.A.P. 2117(c). In addition, our review of the certified record demonstrates that this allegation of error was not raised either before the Referee or before the Board. As a result, this allegation of error has been waived for purposes of appeal, and will not be addressed for the first time by this Court in this appeal. Section 703(a) of the Administrative Agency Law, 2 Pa.C.S. § 703(a); Pa.R.A.P. 1551(a); *Wing v. Unemployment Compensation Board of Review*, 496 Pa. 113, 436 A.2d 179 (1981); *Schneider v. Unemployment Compensation Board of Review*, 105 Pa.Cmwlth. 238, 523 A.2d 1202 (1987).[9]

■ Finally, Claimant contends that the Board erred in overriding the credibility determinations of the Referee. Relying on *Treon v. Unemployment Compensation Board of Review*, 499 Pa. 455, 453 A.2d 960 (1982), Claimant argues that the Board exceeded its authority in making credibili-

us, we must agree with the Board that the claimant failed to carry her burden....").

**8.** As a corollary to this allegation of error, Claimant contends that the Board's decision in the case *sub judice* is based solely upon impermissible hearsay evidence. Initially, it must be noted that the Pennsylvania Rules of Evidence are not applicable to hearings conducted before a Referee. Section 505 of the Law, 43 P.S. § 825; Section 505 of the Administrative Agency Law, 2 Pa.C.S. § 505; *Rue v. K–Mart Corporation*, 552 Pa. 13, 713 A.2d 82 (1998). Nevertheless, it is well settled that, standing alone, uncorroborated and properly objected to hearsay evidence is not competent to support a finding of fact of the Board. *Walker v. Unemployment Compensation Board of Review*, 27 Pa.Cmwlth. 522, 367 A.2d 366 (1976).

However, it is equally well settled that admissions of a party are admissible as competent evidence in proceedings before the Board, and may be relied upon by the Board, as a recognized exception to the hearsay rule. *See, e.g., Borough of Grove City v. Unemployment Compensation Board of Review*, 928 A.2d 371, 374 (Pa.Cmwlth.2007) ("A finding of fact based solely upon hearsay will not stand. However, the admission of a party is an exception to the hearsay rule and is competent to sustain a finding of fact....") (citations omitted); *Evans v. Unemployment Compensation Board of Review*, 86 Pa.Cmwlth. 297, 484 A.2d 822, 826–827 (1984) ("With respect to the hearsay contention, we need only note the long-established principle that words of a party constitute an admission and therefore may always be used against him.") (citations omitted); *Wright v. Unemployment Compensation Board of Review*, 77 Pa.Cmwlth. 278, 465 A.2d 1075, 1076 (1983) ("A finding of willful misconduct in an unemployment case cannot be based solely on hearsay evidence. Were the evidence of Claimant's willful misconduct based solely on hearsay and properly objected to, it would not be sufficient to support a finding. The testimony here, however, was that of a representative of the employer who met with the Claimant and to whom the Claimant admitted taking her employer's property. As an admission of a party it fell within an exception to the hearsay rule and was therefore competent testimony as determined by the Board.") (citations omitted). Thus, contrary to Claimant's assertion, the Board properly relied upon the testimony of Employer's Human Resource Administrator and Director of Nursing as competent evidence in this case. *Id.*

**9.** Moreover, Claimant failed to raise this allegation of error in the petition for review that she filed in this Court. As a result, this claim has not been preserved for appellate review on this basis as well. Pa.R.A.P. 1513(d); *Eck v. Unemployment Compensation Board of Review*, 651 A.2d 689 (Pa.Cmwlth.1994).

ty determinations and findings of fact contrary to those of the Referee based upon undisputed facts in this case. This argument lacks merit.

In *Treon*, the Board rejected a referee's finding that was based on the consistent, uncontradicted testimony of one witness. *Treon*, 499 Pa. at 458–459, 453 A.2d at 961. The Pennsylvania Supreme Court held the Board could not disregard a referee's findings of fact based on consistent, uncontradicted testimony without stating its reasons for doing so. *Id.* at 461, 453 A.2d at 962–963. However, the court explicitly limited its holding, noting "[i]n this case ... we are concerned not with findings made by the Board, but with findings made by the referee which the Board failed to adopt." *Id.* at 460, 453 A.2d at 962. Further, "[t]he Board certainly had the right to disbelieve [the claimant's] testimony, even though that testimony was uncontradicted." *Id.* Thus, our Supreme Court found error in the Board's unexplained failure to adopt a crucial finding of the referee that was based on uncontradicted evidence.

Claimant mistakenly relies on *Treon* for the proposition that the Board must defer to the Referee's findings. Claimant fails to recognize that where factual matters are in dispute, and both sides offer testimony, the Board is the ultimate finder of fact with power to substitute its judgment for that of its referees. *Peak*, 509 Pa. at 270, 501 A.2d at 1385. Indeed, as the Supreme Court has previously noted:

> Nevertheless, appellant claims, even if the Board remains free to reverse its referee's credibility determinations when the evidence is conflicting, its decision here cannot stand because *Treon* also requires the Board to set forth its reasons for doing so whenever it departs from a referee's findings of fact. To the extent *Treon* does impose such a requirement, its purpose is to ensure an adequate basis for judicial review. On this record, the Board's reason for reversing the referee is plain enough. Unlike the referee, it chose to believe the employer, not the employee. It disagreed with the referee's factual resolution of conflicting evidence, a power it has under Section 504 of the [Law.[10]]
>
> We are not inclined to require a busy agency, whose swift disposition of the many cases before it is vital to the subsistence of our fellow citizens who suffer lack of work, to engage in acts of supererogation. The Board's reasons for reversing the referee are plain enough on this record and permit adequate judicial review. We will not impose on it a requirement of redundant explanation....

*Id.* at 273–274, 501 A.2d at 1387 (citations omitted). *See also M.A. Bruder & Sons, Inc. v. Unemployment Compensation Board of Review*, 145 Pa.Cmwlth. 329, 603 A.2d 271, 275 (1992) ("Thus, where there is conflicting evidence, the Board is free to reject the findings of the referee where it believes one side or the other, and our review is limited to a determination of whether the decision is in violation of constitutional rights, or is not in accordance with the law or is not supported by substantial evidence. It is with this scope of

10. Section 504 of the Law provides, in pertinent part:

The board shall have power, on its own motion, or on appeal, to remove, transfer, or review any claim pending before, or decided by, a referee, and in any such case and in cases where a further appeal is allowed by the board from the decision of a referee, may affirm, modify, or reverse the determination or revised determination, as the case may be, of the department or referee on the basis of the evidence previously submitted in the case....

43 P.S. § 824.

review in mind that we consider [Employer's] contentions on appeal.").

In this case, both Claimant and Employer's Human Resource Administrator and Director of Nursing testified and submitted evidence before the Referee. There were conflicting factual issues relating to the existence of a work policy prohibiting the use of cell phones while on duty, Claimant's awareness of such a policy, and Claimant's violation of the policy. Given the conflicting testimony, the Board properly exercised its role as fact-finder and, as outlined above, it chose to credit the testimony of Employer's witnesses over that of the Claimant. *See* Board Decision at 1–3. Moreover, its findings are conclusive in this appeal as they are supported by substantial evidence. *Peak; Taylor.* In short, the Board's reasons for reversing the Referee are plain enough in the certified record of this case and permit adequate judicial review, Peak, and Claimant's allegation of error in this regard is patently without merit.

Accordingly, the order of the Board is affirmed.

### ORDER

AND NOW, this 25th day of April, 2011, the order of the Unemployment Compensation Board of Review, dated July 27, 2010 at No. B–503497, is AFFIRMED.