# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Nathaniel J. Johnson,              :
                    Petitioner      :
                                    :
          v.                        :    No. 817 C.D. 2015
                                    :    SUBMITTED:  October 23, 2015
Unemployment Compensation           :
Board of Review,                    :
                    Respondent      :


BEFORE:    HONORABLE BONNIE BRIGANCE LEADBETTER, Judge
           HONORABLE P. KEVIN BROBSON, Judge
           HONORABLE ROCHELLE S. FRIEDMAN, Senior Judge


**OPINION NOT REPORTED**


**MEMORANDUM OPINION BY**
**JUDGE LEADBETTER**                     **FILED:  December 30, 2015**


Claimant Nathaniel J. Johnson, proceeding *pro se*, petitions this court for review of an order of the Unemployment Compensation Board of Review (Board), which affirmed a referee's determination that Johnson was ineligible for benefits under Section 402(e) of the Unemployment Compensation Law (Law)[1] because of willful misconduct connected with his work.

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. 1937 (2897), *as amended*, 43 P.S. § 802(e). Section 402(e) of the Law provides that an employee is ineligible for compensation for any week in which his unemployment is due to discharge for willful misconduct connected with his work.

The Board, which is the ultimate factfinder in cases of unemployment compensation law,[2] found in relevant part as follows. Claimant last worked for the Philadelphia Housing Authority (Employer) as a full-time, professional painter. Claimant worked for Employer from June 26, 1998, until October 28, 2014. On October 23, 2014, Claimant's foreman spoke to him about his "trip sheet" because Claimant had not recorded times on it. [Finding of Fact, No. 5]. Claimant stated that "it was not his 'f—ing' job, he was not a 'f—ing' secretary" and Claimant departed the office. [*Id.*, No. 6]. Claimant's superintendent then went to Claimant in order "to get him to record his times on the trip sheet." [*Id.*, No. 7]. Claimant poked the superintendent with a finger; Claimant also "pushed the superintendent, used profanity toward the superintendent, and told the superintendent he would 'f—him up.'" [*Id.*, No. 8]. Other employees restrained Claimant, and the superintendent called the housing police as well as human resources. The housing police arrived at Employer's location and drafted a report.

Employer maintains a policy with respect to workplace violence that prohibits any acts or threats of violence against its residents, contractors, visitors or employees at any time. Violation of this policy may result in termination from employment. Employer's policy is contained in the handbook that Claimant was given when he was hired. Employer discharged Claimant for exhibiting or engaging in threatening or violent behavior.

The Department of Labor and Industry determined that Claimant was not ineligible for benefits under Section 402(e) of the Law because Employer had not provided information to show that Claimant had violated a workplace rule. On appeal by Employer, the referee reversed, crediting Employer's witness that

---

[2] *See Peak v. Unemployment Comp. Bd. of Review*, 501 A.2d 1383 (Pa. 1985).

2

Claimant had violated Employer's rule prohibiting violence against its employees and that Claimant was or should have been aware of this rule. Specifically, the referee credited Employer's witness' testimony that "the incident occurred the morning of October 23, 2014, the Claimant used profanity toward the foreman and toward the superintendent, he poked and pushed the superintendent and said, 'I'll f—you up.'" [Referee's Decision, No. 15-09-D-0535, dated February 19, 2015, at 2]. On appeal by Claimant, the Board affirmed the referee's decision.[3]

On appeal here, Claimant asserts that he had previously reported his superintendent to human resources for being a harasser and a bully, for calling Claimant a racial slur, and for denigrating his intelligence, among other insults. Specific to the incident in question, Claimant also argues that, when he refused to sign a "write-up" and left the superintendent's office, the superintendent confronted him and hurled a racial epithet at him. According to Claimant, no other employee was present during this incident; thus, testimony from any employee purporting to be a witness to the exchange between Claimant and his superintendent was neither reliable nor truthful. In this vein, Claimant points out that Employer failed to offer any documents or video objectively proving that Claimant engaged in a deliberate violation of Employer's policy or rule, which Claimant maintains he did not do.

Willful misconduct has been defined to include a deliberate violation of an employer's work rule. *Navickas v. Unemployment Comp. Bd. of Review*, 787

---

[3] In doing so, however, the Board altered the referee's tenth finding of fact to reflect that, as set forth above, the superintendent called the housing police and human resources but not the police department and that, when the housing police arrived at the scene, they made a report. The Board added that the referee could properly credit the testimony of Employer's witness without requiring video evidence because the "best evidence" rule does not apply in unemployment compensation cases. [Board Op., No. B-577938, April 30, 2015, at 1].

A.2d 284, 288 (Pa. 2001). When an employee is discharged for violating a work rule, the employer must prove the existence of the work rule, the reasonableness of the rule, the employee's awareness of the rule, and the fact of its violation. *Chapman v. Unemployment Comp. Bd. of Review*, 20 A.3d 603, 607 (Pa. Cmwlth. 2011). The burden then shifts to the employee to prove that he had good cause for violating the rule. *Id.* An employee establishes good cause by showing that his conduct was justified or reasonable under the circumstances. *Id.*

Moreover, whether a claimant's actions amount to willful misconduct is a question of law over which we exercise plenary review. *Yost v. Unemployment Comp. Bd. of Review*, 42 A.3d 1158, 1162 (Pa. Cmwlth. 2012). In conducting our review, this Court must examine the evidence in the light most favorable to Employer, who in this case is the party that prevailed before the Board; we must also give Employer the benefit of all inferences that can be logically and reasonably drawn from the testimony. *See Chapman*, 20 A.3d at 607.

Despite Claimant's argument that Employer failed to present any objective evidence that he deliberately violated a workplace rule, we hold that the Board properly relied upon the competent, credible testimony of Employer's witness to conclude that Claimant acted in a threatening manner. First, as a technical matter and contrary to Claimant's assertions, Employer was not required to introduce into evidence any video that may have existed of the subject incident because the "best evidence" rule is not generally applicable to administrative hearings. *See DiLucente v. Pa. Prevailing Wage Appeals Bd.*, 692 A.2d 295, 298 (Pa. Cmwlth. 1997); *see also* 2 Pa. C.S. § 505 (providing, "Commonwealth agencies shall not be bound by technical rules of evidence at agency hearings, and all relevant evidence of reasonably probative value may be received. Reasonable

4

examination and cross-examination shall be permitted."). Second, Claimant's threat to "f—up" his supervisor, which the Board found credible, could not be reasonably perceived as anything other than a deliberate violation of Employer's work rule prohibiting violence against its employees, a rule of which Claimant should have been aware. *See Johns v. Unemployment Compensation Bd. of Review*, 87 A.3d 1006, 1010 (Pa. Cmwlth.) (providing that it is well settled that "threats of harm toward a co-worker or supervisor constitute willful misconduct under the Law"), *petition for allowance of appeal denied*, 97 A.3d 746 (Pa. 2014).

Finally, while there is record evidence that Claimant and the superintendent did not have a good working relationship and that Claimant had previously reported the superintendent to Employer's human resources department, Claimant did not testify at the hearing before the referee or raise before the Board any assertion that the superintendent hurled racial epithets at him during the incident leading to his discharge. Claimant did not argue that he was provoked into threatening the superintendent or that he had good cause for his actions; his argument is essentially that the superintendent was a harasser and a bully and that he, rather than Claimant, proved the aggressor in this instance. The Board found contrary to Claimant's assessment of the facts, and its findings are substantially supported by the record evidence, as set forth above.[4]

Accordingly, we affirm.

_____
**BONNIE BRIGANCE LEADBETTER,**
Judge

---

[4] Substantial evidence is the relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *Fera v. Unemployment Comp. Bd. of Review*, 407 A.2d 942 (Pa. Cmwlth. 1979).

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Nathaniel J. Johnson,          :
               Petitioner    :
                       :
          v.         :    No. 817 C.D. 2015
                       :
Unemployment Compensation  :
Board of Review,         :
             Respondent  :

# **O R D E R**

AND NOW, this 30th day of December, 2015, the order of the Unemployment Compensation Board of Review is hereby affirmed.

 

 

_____
**BONNIE BRIGANCE LEADBETTER,**
Judge