# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Ashely M. Kearsley,                                    :
                          Petitioner               :
                                                   :
          v.                                       :     No. 294 C.D. 2017
                                                   :     Submitted: July 14, 2017
Unemployment Compensation                          :
Board of Review,                                   :
                          Respondent               :

BEFORE:     HONORABLE ROBERT SIMPSON, Judge
            HONORABLE P. KEVIN BROBSON, Judge
            HONORABLE JAMES GARDNER COLINS, Senior Judge

OPINION NOT REPORTED

**MEMORANDUM OPINION**
**BY JUDGE SIMPSON**                    **FILED: November 28, 2017**


          Ashely M. Kearsley (Claimant), representing herself, petitions for
review from an order of the Unemployment Compensation Board of Review (Board)
denying her unemployment compensation (UC) benefits because she did not satisfy
the financial eligibility requirements of Section 401(a) of the Unemployment
Compensation Law (Law).[1]   In so doing, the Board reversed the referee's decision.
She contends the Board erred in excluding wages she earned from Kaleidoscope
Family Solutions, Inc. (KFS) based on insufficient proof.  She asserts she submitted
her pay stubs to the Department of Labor and Industry (Department) as required,
providing proof of her base year earnings throughout the proceedings.  She also argues
the Board erred in ignoring her sworn testimony as to her earnings.  Based on gaps in
the record, we vacate and remand for further proceedings.

_____

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, as amended, 43 P.S. §801(a).

# I. Background

Claimant worked as a special education teacher for KFS. Relevant here, she previously applied for UC benefits in June 2015, naming KFS as her employer. The Erie UC Service Center issued a determination finding she was ineligible because she was self-employed. In August 2015, a referee held a hearing to discern whether Claimant was self-employed or was employed by KFS. KFS did not appear. The referee determined Claimant "was not self-employed under Section 402(h) and Section 4(l)(2)(B) of the [Law]." Bd. Op., 2/24/17, Finding of Fact (F.F.) No. 1; Certified Record (C.R.) at Item No. 9 (Clmt. Ex. 1). Significantly, KFS did not appeal that determination. As a result, the referee's August 2015 decision became final and binding on KFS under Section 509 of the Law, 43 P.S. §829.

As to this UC claim, Claimant stopped working for KFS on February 10, 2016. At that time, the Therapeutic Center at Fox (Therapeutic Center) hired her directly in the same teaching position for the Villa Academy. She continued teaching for the Therapeutic Center until June 17, 2016, when the program ended and she was laid off. She applied for UC benefits on July 6, 2016.

Excluding wages from KFS, the Erie UC Service Center found her financially ineligible for UC benefits on July 12, 2016 (July Determination). See C.R. at Item No. 3. The July Determination showed only wages in the first quarter of 2016 from the Therapeutic Center, in the amount of $4,683. Claimant timely appealed on July 18, 2016, alleging missing wages from KFS (First Appeal). F.F. No. 9; see Pet'r's Br. at App. D.

2

From the submissions and findings, it appears the Harrisburg office received her First Appeal on July 27, 2016.[2] An email dated August 8, 2016, directed to "LI, UCP-UCSC-Erie" states: "Claimant called to see if appeal was received. There are no annotations that you received it but HOC recvd it on 160727 and forward[ed] it. Claimant was advised to send it again but she would like her appeal processed." C.R., Item No. 3.[3] The Claim Record also indicates the Department advised Claimant to send pay stubs and a W-2, noting "CLT STATES UNABLE TO FAX, WILL MAIL THEM IN." C.R. at Item No. 1. It appears that in the interim, Claimant resubmitted her appeal as requested. C.R. at Item No. 4 (Web Petition for Appeal as to July Determination) (Second Appeal).

On August 17, 2016, the Department vacated its July Determination. F.F. No. 10. The record contains no explanation for the Department's decision in this regard.[4] The record also does not include Claimant's submissions to the Department to supplement her First Appeal.

Also in August 2016, the Department undertook a wage investigation to discern Claimant's financial eligibility. C.R. at Item No. 5. Despite the August 2015 referee decision to the contrary, the Department determined Claimant was an independent contractor of KFS. As a result, it deemed Claimant financially ineligible.

---

[2] There is a notation in the Claim Record dated "160727" stating: "MON APL REC'D IN HOC FROM CLMT; FWD TO 0993." Certified Record (C.R.) at Item No. 1.

[3] This email corresponds to the entry in the Claim Record dated "160808" stating "ADV CLMT WLD EMAIL SUP REGARDING CLMTS APPL TO FIN DETER SENT TO 0993." Id.

[4] The Board found "the Department vacated its [July Determination] under Revised Standing Order 2014-2." Bd. Op., 2/24/17, Finding of Fact (F.F.) No. 10. However, the basis for this finding is not clear. It also occurred after Claimant filed her First Appeal.

By mid-September, Claimant still did not receive UC benefits or other communication from the Department about her appeals. F.F. No. 11. When she inquired about the status of her claim, she was instructed to appeal. F.F. No. 12. Claimant appealed as instructed (Third Appeal). However, at that time, the Department had not issued a revised financial determination from which she could appeal. F.F. No. 13. On September 22, 2016, the Department issued a revised eligibility determination (September Determination).[5] F.F. No. 14.

Claimant did not timely appeal the September Determination. On this record, it is unclear whether she received it. The Claim Record reflects she contacted the Department about her UC benefits on October 13, 2016. The Department advised her to submit another appeal, explaining the late filing. F.F. No. 16. She appealed the September Determination on October 18, 2016 (Final Appeal). C.R. at Item No. 4.

The Department scheduled a hearing. The hearing notice listed the Therapeutic Center as the employer, and KFS ("Employer") and Labow James Harley ("Agency Representative") as additional interested parties. C.R. at Item No. 7.

A referee held a telephonic hearing.[6] Again, KFS did not appear. The Agency Representative scheduled to participate was also not available. A representative for Therapeutic Center testified as to Claimant's earnings in the first

---

[5] The September 22, 2016 financial determination from which Claimant appealed, and is before us, is not included in the certified record. The only information about its content is found in the referee's decision, stating it was the same as the July Determination.

[6] Prior to the hearing, Claimant emailed the Department "forms for Ashely Kearsley and 1099 status." See C.R. at Item No. 4 (email dated 11/15/16). Although the email shows two .jpg attachments, only a copy of the transmission email appears in the certified record.

4

quarter of 2016. The referee facilitated the testimony as there was some question as to which employer, KFS or Therapeutic Center, paid Claimant in that quarter. N.T. at 12.

Claimant testified on her own behalf regarding her appeals and her wages. In the course of her appeals, she submitted a 1099 form showing payments from KFS in 2015 totaling $34,919.80, a copy of the referee's August 2015 decision, and pay stubs from KFS and from the Therapeutic Center.[7] N.T. at 10. The referee accepted this evidence.

Claimant testified about misinformation received from the Department, which led her to submit three or four appeals for one UC claim. N.T. at 13. She expressed confusion about the process when a prior referee decided the matter in her favor. She "didn't realize that when it was a new claim, I had to go through the whole process again. Because I said it was already determined. Why would I have to sit through another Referee Hearing if I'm debating the same facts … [?]" N.T. at 14.

Claimant testified she worked full-time during the school year. During the summer, she worked shorter hours. The referee noted a pay stub for the third week of June 2015 showed the transition from full-time to a summer schedule. She testified the summer schedule was in effect from late June until the first day of school, September 1st. Id. at 17. She testified she earned $552 per week during the summer schedule, other than the first week of August 2015, when she took vacation.

---

[7] "Public Health Management Corporation" appears as the payer on the pay stubs from Therapeutic Center for teaching at the Villa Academy. C.R. at Item No. 1.

After deeming her Final Appeal timely, the referee determined Claimant was financially eligible for benefits. She found Claimant earned the following from KFS: $12,675 in the 2nd quarter of 2015; $8,204 in the 3rd quarter of 2015; $14,040 in the 4th quarter of 2015; and, $9,357 in the 1st quarter of 2016. Ref. Dec., 12/1/16, F.F. No. 7. KFS appealed to the Board.[8]

The Board reversed the referee's eligibility determination, issuing its own findings and conclusions. As to Claimant's relationship to KFS, it found the referee's decision in August 2015 concluding that Claimant was not self-employed bound KFS. Bd. Op., 2/24/17, F.F. Nos. 1, 2. The Board found Claimant received the following wages from KFS: $1,632.00 in the 2nd quarter of 2015; $552.00 in the 3rd quarter of 2015; $870.75 in the 4th quarter of 2015; and, $1,080.00 in the 1st quarter of 2016. F.F. Nos. 4-7. It also found Claimant received $4,683.60 in wages in the 1st quarter of 2016 from the Therapeutic Center. Her highest quarterly base year wages were $5,763.60, whereas her base year wages totaled $8,818.35.

Ultimately, the Board determined Claimant was financially ineligible for UC benefits under Section 401(a) of the Law because she did not earn sufficient wages in her base year. The Board reasoned "[a] form 1099 is insufficient evidence to establish when [Claimant] received her payments, as is [her] testimony about how much she generally worked in given months. [Claimant] presented only a sampling of pay stubs from KFS, the only competent evidence of her wages." Bd. Op. at 4 (emphasis added). Thus, it concluded Claimant did not meet her burden of proof.

---

[8] KFS also attempted to submit evidence to the Board that it was not Claimant's employer, including a copy of the independent contractor agreement. See C.R. at Item No. 11. The Board did not accept this evidence. Bd. Op. at 2.

Claimant filed a petition for review to this Court, alleging she was financially eligible for UC benefits because she earned sufficient wages. In support, she appended additional records documenting her pay, including several pay stubs and a copy of a check register report from KFS showing it paid her a total of $40,408.26 from 3/22/15 to 2/19/16. Claimant explained older KFS pay stubs were unavailable because "this case [was] closed months ago." Pet'r's *Pro Se* Letter, 3/6/17.

The Board filed an application to strike this extra-record material, which this Court granted. Claimant then filed a motion for reconsideration asking this Court to consider additional pay stubs, which we denied. The matter is ready for disposition.

## II. Discussion

On appeal,[9] Claimant argues the Board erred in determining there was insufficient evidence to establish her financial eligibility. Specifically, she argues the pay stubs, the 1099 form and her testimony are sufficient evidence establishing her eligibility for UC benefits at a rate of $564 per week. She also contends the Board erred in disregarding her testimony that she earned $27 per hour, 8 hours a day, 5 days a week, while working for KFS during the school year.

Here, the Board determined Claimant did not establish sufficient base year earnings to qualify for UC benefits. Although the Board included payments from KFS that were supported by pay stubs, it reasoned that the evidence Claimant submitted was insufficient to show the base year earnings she claimed.

---

[9] Our review of the Board's decision on financial eligibility is limited to determining whether necessary findings of fact were supported by substantial evidence, whether the adjudication is in accordance with the law, and whether constitutional rights were violated. Devine v. Unemployment Comp. Bd. of Review, 101 A.3d 1235 (Pa. Cmwlth. 2014).

7

The claimant bears the burden to prove financial eligibility. Pagliei v. Unemployment Comp. Bd. of Review, 37 A.3d 24 (Pa. Cmwlth. 2012). To meet her burden, a claimant must satisfy the requirements of Sections 401(a) and 404 of the Law. 43 P.S. §§801(a), 804. Section 404 of the Law establishes the manner in which the UC benefit is calculated. 43 P.S. §804. Section 401(a) of the Law provides compensation shall be payable when an employee:

(1) has, within [her] base year,[10] been paid wages for employment as required by Section 404(c) of this act.

(2) Except as provided in section 404(a)(3), not less than forty-nine and one-half percentum (49.5%) of the employe's total base year wages have been paid in one or more quarters, other than the highest quarter in such employe's base year.

43 P.S. §801(a).

Facts found by the Board will not be disturbed on appeal if they are supported by substantial evidence. Chapman v. Unemployment Comp. Bd. of Review, 20 A.3d 603, 607 (Pa. Cmwlth. 2011). "Substantial evidence has been defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Procyson v. Unemployment Comp. Bd. of Review, 4 A.3d 1124, 1127 n.4 (Pa. Cmwlth. 2010). In reviewing the record for substantial evidence, we "must examine the evidence in the light most favorable to the party who prevailed before the Board, and … give that party the benefit of all inferences that can be logically and reasonably drawn" therefrom. Chapman, 20 A.3d at 607.

---

[10] A claimant's UC benefit is calculated based on wages earned during her "base year," defined as "the first four of the last five completed calendar quarters immediately preceding the first day of an individual's benefit year." Section 4(a), 43 P.S. §753(a).

However, the Board may not capriciously disregard competent evidence. Treon v. Unemployment Comp. Bd. of Review, 453 A.2d 960 (Pa. 1982). "Although the Board is the ultimate fact[-]finder, the Board cannot ignore overwhelming evidence in favor of a contrary result which is not supported by the evidence." Stauffer v. Unemployment Comp. Bd. of Review, 74 A.3d 398 (Pa. Cmwlth. 2013) (quoting Phila. Gas Works v. Unemployment Comp. Bd. of Review, 654 A.2d 153, 157 (Pa. Cmwlth. 1995)).

## A. Administrative Breakdown

Before addressing the sufficiency of Claimant's evidence, we consider the unique circumstances that led to this appeal.

There is no dispute that during the administrative proceedings, Claimant received misinformation about her claim, her financial eligibility, and the appeals process. Notably, the Board reviewed the history of this case as follows:

> The record abounds with evidence of administrative breakdown. The Department waited nearly a month after [Claimant] filed a timely appeal to vacate its original financial determination, neglected to promptly investigate [Claimant's] missing wages, advised [Claimant] to file an appeal from a nonexistent financial determination, and then failed to issue a revised financial determination until after [Claimant] filed yet another appeal.

Bd. Op. at 3. Thus, the Board allowed a late appeal from the September Determination.

In addition to the Board's summary, the Claim Record shows Claimant filed multiple appeals based on misinformation she received from the Department. Claimant expressed confusion throughout the process when timely appeals were not processed. See C.R. Item No. 1 (Claim Record). She also expressed confusion as to

9

why she needed to submit documentation of her wages from KFS when the Department previously determined in 2015 that she was not self-employed, and, that payments from KFS counted as wages. See C.R. at Item No. 9 (Clmt. Ex. 1, Referee's Dec., 8/14/15); N.T. at 13-14.

The Claim Record documents that Claimant submitted material in support of her claim. Indeed, there are six pay stubs showing payments from KFS, additional pay stubs showing payments from the Therapeutic Center, and an IRS 1099 form for 2015 showing payments from KFS totaling $34,919.80. Nonetheless, the certified record appears incomplete.

Significantly, the certified record does not contain a copy of the September Determination appealed from. It contains only the July Determination that the Department subsequently vacated. The referee noted this deficiency, stating "it's the exact same financial information in the chart as the one that was mailed in September." N.T. at 6 (marking Referee 5). Yet, the fact remains, there is no September Determination for this Court to review.

Aside from the gaps in the certified record, there is a real possibility that the record does not contain evidence that Claimant previously submitted related to her financial eligibility. Whereas the certified record contains Claimant's Final Appeal, it is unclear whether it contains all of the pay information Claimant submitted with her First Appeal, Second Appeal or Third Appeal, or at any time in between. This is particularly troubling when the Board deemed Claimant financially ineligible based on a lack of proof.

10

Also, during the course of the administrative appeals, Claimant's First Appeal was missing, and the Erie UC Service Center had no record of its receipt until after the appeal period expired. Then, the Department vacated the July Determination from which she appealed to replace it with the September Determination that was purportedly the same. With these acknowledged deficiencies, it is not clear to this Court that the certified record contains all of Claimant's submissions.

Moreover, it is evident that multiple administrative communications and repeated appeals led to Claimant's confusion regarding the issues in dispute. Claimant was uncertain whether the Department determined her ineligible based on independent contractor status. The Claim Record reveals entries that Claimant was "ruled IC." C.R. at Item No. 1. Her confusion is thus understandable.

This Court recognized that issuance of revised notices of determination causes confusion. Martyna v. Unemployment Comp. Bd. of Review, 692 A.2d 594 (Pa. Cmwlth. 1997). Among other reasons, it raises the question of whether the Department had jurisdiction to issue more than one determination, particularly when there is evidence of a timely appeal before its revision. We reasoned "[the claimant] should not bear the consequences of that administrative confusion." Id. at 597.

The information the Department provided to Claimant regarding the issues in dispute is material to whether Claimant had a full and fair opportunity to submit evidence about those issues.[11] Given the gaps in the certified record, and the lack of development of the record during the referee's hearing, this Court cannot

_____

[11] Also, the hearing transcript reflects that the referee was satisfied with the pay stubs Claimant submitted. When she noted she was attempting to locate additional pay stubs, the referee repeated, "That's alright," N.T. at 16, and "That's okay," N.T. at 17, indicating her satisfaction. However, the Board as fact-finder did not share the referee's view of the evidence.

discern this issue. It would be inappropriate to penalize Claimant for the insufficiency of the record before the Court in this regard. Martyna.

Here, there is a legitimate question as to the completeness of the record before the Board, particularly as to whether it included all of Claimant's submissions. Also, the Board acknowledges the Department mishandled this appeal, misinforming Claimant throughout the process. Under these rare circumstances, when the Department's misdirection may be the cause of the evidentiary deficiency, a remand for further development of the record is in order. Accordingly, we remand for further explication of the Department's communications to Claimant, including the September Determination. On remand, the Board may accept additional evidence to develop an adequate record for appellate review. Stana v. Unemployment Comp. Bd. of Review, 791 A.2d 1269 (Pa. Cmwlth.), appeal denied, 813 A.2d 848 (Pa. 2002); see also Dorn v. Unemployment Comp. Bd. of Review, 866 A.2d 497 (Pa. Cmwlth. 2005) (remanding to allow Board to consider corrected wage information and a new eligibility determination based on that information); Bereznak v. Unemployment Comp. Bd. of Review (Pa. Cmwlth., No. 1366 C.D. 2011, filed July 20, 2012), 2012 WL 8682665 (unreported) (remanding for credibility determinations).

### B. Submitted Evidence and Findings

In addition to developing the record on remand, we also direct the Board to explain its findings and credibility determinations as to the evidence the Board acknowledges Claimant submitted.

In determining Claimant was financially ineligible, the Board relied solely on five pay stubs Claimant submitted during the administrative proceedings. The Board concluded the pay stubs were the only competent evidence before it

12

regarding Claimant's wages. Thus, the Board disregarded the 1099 form showing payments from KFS in 2015, and Claimant's testimony about her earnings.

Importantly, the record reflects that Claimant submitted at least six pay stubs. C.R. at Item No. 1. Respondent acknowledges that one paystub from September 2015, in the amount of $654.75 was not considered by the Board. See Resp't's Br. at 12 n.15. Thus, the Board's finding as to Claimant's earnings in the 3rd quarter of 2015, F.F. No. 5, is contrary to the evidence of record, as is its conclusion regarding her base year earnings. Stauffer. This Court cannot presume whether the consideration of this additional pay stub, which the Board overlooked, would have tipped the scale in Claimant's favor. Thus, a remand for additional fact-finding is appropriate.

In addition to this oversight, the Board did not explain its disregard of competent evidence other than Claimant's pay stubs. The Board disregarded the 1099 form showing Claimant received $34,919 from KFS since her hiring in March 2015 through December 2015. Although the 1099 form does not constitute evidence as to which quarter the earnings were received, it evinces her earnings over the three relevant quarters in 2015. The Board's conclusion that Claimant earned a total of $8,818.35 in base year earnings cannot be reconciled with evidence of her total earnings from KFS as reflected on the 1099 form at almost four times that amount.

It is also unclear why the Board did not consider Claimant's testimony competent evidence. Testimony, if credited, constitutes competent evidence. The Board is free to discount testimony even when that testimony is uncontradicted. However, as fact-finder, the Board must make credibility determinations. Miller v. Unemployment Comp. Bd. of Review, 131 A.3d 110, 115 (Pa. Cmwlth. 2015)

13

("Where the Board fails to make necessary findings and credibility determinations we must remand to the Board."); see also Bereznak.

Here, the Board offered no basis to discredit Claimant's uncontradicted testimony. Claimant testified she worked full-time as a special education teacher at the Villa Academy, starting in March 2015. She was paid through KFS, until the Therapeutic Center hired her directly in 2016. She worked full-time during the school year; then in late June, she transitioned to a summer schedule. The pay stubs corroborate the transition from 8-hour days to 4.5-hour days in the summer of 2015.

As to the 3rd quarter of 2015, Claimant specified that she worked the summer schedule until September 1, 2015, with the exception of one week in August. Her testimony substantiates that she earned $552 for four weeks in July and three weeks in August. Her pay stubs show that once she started full-time in September, she earned $216 per 8-hour day. Yet, the Board found she earned only $552 in wages from KFS from July 1 through September 30, 2015.

Accordingly, we also remand for the Board to address the documentary and testimonial evidence contrary to its conclusion. Specifically, we instruct the Board to address the credibility of Claimant's testimony, and to render new findings based on the credited evidence as to Claimant's earnings.

Further, it appears that the Claim Record served as the sole basis for several of the Board's findings. See Bd. Op., 2/24/17, Findings of Fact Nos. 9-15. Not all of the entries in the Claim Record are comprehendible without explanatory testimony. Therefore, on remand, we urge the Board to develop the record, with testimony of a Department representative if necessary, to substantiate these findings.

14

## III. Conclusion

For the foregoing reasons, the order of the Board is vacated and the matter is remanded with instructions to develop the evidentiary record in accordance with this opinion.

_____
ROBERT SIMPSON, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Ashely M. Kearsley,                      :
                 Petitioner    :
                                       :
        v.                      :   No. 294 C.D. 2017
                                       :
Unemployment Compensation                :
Board of Review,                         :
              Respondent    :

## O R D E R

**AND NOW**, this 28th day of November, 2017, the decision of the Unemployment Compensation Board of Review is **VACATED**, and the matter is **REMANDED** with instructions to develop a sufficient record for appellate review, and to issue a new determination based thereon, in accordance with the foregoing opinion.

      Jurisdiction is relinquished.


_____
ROBERT SIMPSON, Judge