# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Sarolta Z. Farkas,      :
            Petitioner      :
            :
            v.      :    No. 2673 C.D. 2015
            :    Submitted: June 10, 2016
Unemployment Compensation      :
Board of Review,      :
            Respondent      :


BEFORE:     HONORABLE RENÉE COHN JUBELIRER, Judge
                    HONORABLE MICHAEL H. WOJCIK, Judge
                    HONORABLE ROCHELLE S. FRIEDMAN, Senior Judge


**OPINION NOT REPORTED**


**MEMORANDUM OPINION**
**BY JUDGE COHN JUBELIRER**          **FILED: August 26, 2016**

Sarolta Z. Farkas (Claimant), proceeding pro se on appeal, petitions this Court for review of the Order of the Unemployment Compensation Board of Review (Board) affirming the Decision of a Referee finding Claimant ineligible for Unemployment Compensation (UC) benefits under Section 402(e) of the Unemployment Compensation Law (Law).[1] On appeal, Claimant argues that the Jewish Community Center of York (Employer) has not met its burden of proving

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, as amended, 43 P.S. § 802(e) (providing, in relevant part, that a claimant is ineligible for UC benefits for any week in which the claimant is unemployed due to discharge occasioned by the claimant's willful misconduct in connection with the claimant's former work).

willful misconduct. Because we conclude that there are inconsistencies in the Board's decision, we vacate the Board's Order and remand for a new decision.

Claimant was employed as a teacher by Employer from September 1, 1998, to June 29, 2015. (Referee Decision, Finding of Fact (FOF) ¶ 1.) On July 2, 2015, Claimant applied for UC benefits. (Internet Initial Claims form (Claims Form) at 1, R. Item 2.) In her Claims Form, Claimant indicated that she was fired for violating a policy that: "one is not allowed to touch a child." (Id. at 2.) Claimant also made the following statement:

> Until my employment was terminated on Monday 29 Ju[ne], I worked for [Employer's] School Age and Summer Camp Programs as a teacher. During the Summer Camp, groups of children and their camp counselors came to my classroom for an hour or half hour of planned and supervised activities in a building separate from, but on the campus of [Employer]. The classroom was large enough to accommodate 10 children comfortably. A child with Down Syndrome and autism [(the Child)] was enrolled in the oldest group of children. Though the [C]hild is a teenager, he is not verbal. The [C]hild was often tired by the afternoon, when he attended my class, and developed a habit of lying down on the carpet as soon as he entered the room, often falling asleep there. In doing so, he not only blocked the area where the other campers engaged in their scheduled activities, but more importantly, put himself in danger of being stepped on and other children in danger of tripping on him. The day the incident I am reporting on occurred, twelve children entered the classroom, filling the room. I asked the [C]hild to move, but he did not react. I attempted to pull the [C]hild's legs gently towards the edge of the carpet so that both he and the other children would be safe and we could begin the days' [sic] activities. I did not actually move the [C]hild; he moved slightly out of the way.
> . . . .
>
> Our program has a "hands off" policy in place in which teachers are not allowed to touch children, except in cases of emergency. In this case, I felt that both the [C]hild and the other children in the group would be safer if I moved the [C]hild out of the way before he fell asleep.

I do not believe he was in any way harmed or humiliated by my action. My understanding of all policies is that it is the teacher's job to prevent potential harm and accidents. This was my goal in moving the [C]hild.

(Id. at 7.) The Altoona UC Service Center (Service Center) determined that Claimant was ineligible for UC benefits under Section 402(e) of the Law, reasoning that Claimant engaged in willful misconduct by touching the Child in violation of Employer's zero-tolerance policy against touching a child except in cases of emergency. (Notice of Determination at 1, R. Item 4.) Claimant appealed the Service Center determination, and the matter was assigned to the Referee. (Petition for Appeal, R. Item 5.)

The Referee held a hearing on August 13, 2015. (Referee Decision at 1.) Employer presented the testimony of Claimant's former supervisor (Supervisor), and one of Claimant's former co-workers (Co-worker). (Hr'g Tr. at 6, 19, R. Item 8.) Supervisor stated that, based on Department of Human Services' (DHS) regulations, Employer maintains a zero tolerance policy against touching children except for when the child poses a flight risk or a danger to themselves or others. (Id. at 6-7.) Supervisor also testified that Claimant was fired for violating the policy. (Id. at 10.) Co-worker, who was present at the time Claimant allegedly violated the policy, stated that the policy prevented touching a child at all, and asserted that Claimant violated it by grabbing the Child by the arm and attempting to drag him. (Id. at 19-23.) Claimant presented her own testimony and stated that she was concerned that the Child might be tripped over, that she touched only the Child's sock, and that she was unaware of the existence of the policy. (Id. at 30-32, 35.) Although Claimant's representative repeatedly attempted to question Supervisor, Co-worker, and Claimant regarding whether the policy did in fact

3

exist, and whether Claimant had knowledge of it on the date of the incident, the Referee repeatedly prevented Claimant's representative from doing so. (Id. at 11-12, 14-15, 34-35, 37, 44.) The Referee indicated that, based upon Claimant's statements on her Claims Form, he was "satisfied [that] Claimant was aware of the rule." (Id. at 15.)

Based on that testimony, the Referee made the following findings of fact:

1. For the purposes of this appeal, claimant was last employed by Jewish Community Center of York, in a full-time position as a teacher, earning around $13 per hour from September 1, 1998 until June 29, 2015.

2. On June 29, 2015, the employer terminated claimant's employment.

3. The employer advised claimant she was being terminated for violation of a rule, which incorporates by reference the [DHS regulation] that no child can be touched except to address a danger involving that child or where the child presents a danger to others; violation of same constitutes a terminable offense under the employer's rules and regulations; claimant knew or should have known of the policy and relevant disciplinary consequences.

4. On June 25, 2015, claimant was involved in an event that while escorting children into a small room, one of the children . . . who has Downs Syndrome [sic], as part of his normal routine, placed himself on the floor on his left side and raised his right arm up.

5. To address this matter, the claimant contacted her supervisor who attempted to speak to the [C]hild for approximately 30 to 45 minutes, to no avail.

6. The [C]hild does hear and can respond to verbal instructions.

7. While the other children were filing into the room and directed to sit in a circle around [the Child], claimant became concerned not only for [the Child's] safety but also for the safety of the other

4

children, whereby they might come in contact with him, trip over him, etc.

8. As a result of claimant's concern, claimant grasped [the Child] around his upper arm and dragged him from the circle of children.[2]

9. Based on the above, [] [C]o-worker reported to their superiors that claimant had violated the zero tolerance no-touch rule by grasping [the Child] around his upper arm and dragging him from the circle of children; claimant denied same.

10. On June 29, 2015, claimant was notified by the employer to attend a meeting to provide her side of the story; claimant did so.

11. At no time prior to June 29, 2015 was claimant advised of any concerns by the employer regarding her conduct or any allegation relating to potential misconduct.

12. Based on the employer's investigation on June 29, 2015, the employer terminated claimant's employment in accordance with its rules and regulations for allegedly violating its zero tolerance no-touch policy.

(FOF ¶¶ 1-12.) With regard to Claimant's testimony that she only touched the Child's sock, the Referee stated:

---

[2] We note the following exchange at the hearing between the Referee and Co-worker, who was the only firsthand witness to the incident between Claimant and the Child, other than Claimant, to offer testimony:

R:      [Claimant grasped the Child] with both hands, and then proceeded to drag him?
EW3:  Yes. Well [Claimant] attempted to drag [the Child], but he . . .
R:      [Claimant] either did or she didn't. Did [Claimant] drag [the Child]? Did she—was he—did [the Child] move?
EW3:  No. [The Child] did not move.

(Hr'g Tr. at 22.) No testimony was offered at the hearing to challenge Co-worker's indication that the Child was not dragged.

5

> With respect to the conduct that served as the basis for termination, the Referee finds [C]laimant's testimony without merit that she only touched the [C]hild's sock in an effort to move the [C]hild, *given that she was concerned about the [C]hild's personal safety* and the safety of other children in the immediate surrounding area. Any discrepancy between the [E]mployer's testimony and [C]laimant's concerning the conduct serving as the basis for termination, the Referee resolves in favor of the [E]mployer.

(Referee Decision at 3 (emphasis added).) Accordingly, the Referee denied Claimant's appeal and affirmed the Service Center determination. (Id.) Claimant appealed to the Board.

The Board affirmed the Referee and "adopt[ed] and incorporate[d] the Referee's findings and conclusions." (Board Order.) However, in contrast to the Referee's finding that Claimant dragged the Child, the Board determined that Claimant "attempted to drag [the Child] by the arm."[3] (Id.) The Board also stated that "[t]he Board credits the testimony of the employer's witness that there was no immediate safety issue with the [C]hild . . . ." (Id.) Claimant now petitions this Court for review.[4]

On appeal, Claimant argues that Employer has not met its burden of proving that (1) a workplace rule existed, (2) that such was known to Claimant, (3) that Claimant violated a known rule, and (4) that the rule alleged to be violated was reasonable. (Cl. Reply Br. at 4.) Claimant also argues that the Referee unduly interfered with her questioning pertaining to the existence of both Employer's

---

[3] The Referee found that "[a]s a result of claimant's concern, claimant grasped [the Child] around his upper arm *and dragged him from the circle of children.*" (FOF ¶ 8 (emphasis added).)

[4] "Our scope of review is limited to determining whether constitutional rights have been violated, whether errors of law were committed, or whether findings of fact are supported by substantial evidence." Miller v. Unemployment Comp. Bd. of Review, 131 A.3d 110, 112 n.4 (Pa. Cmwlth. 2015) (citation omitted).

6

policy and the DHS regulation upon which the policy was allegedly based, as well as her knowledge thereof prior to her termination. In response, the Board argues that its Opinion is supported by substantial evidence and must, therefore, be affirmed.[5] Additionally, the Board, and Employer as intervenor, assert that the only credited testimony establishes that there was no safety risk to the Child, and therefore, that Claimant's actions were not reasonable and she was without good cause for violating Employer's policy.

Where a finding of willful misconduct is based on a rule violation, the burden is on the employer to prove "that the rule existed, that the rule was reasonable[,] that the claimant was aware of the rule," and that the claimant violated the rule. Oyetayo v. Unemployment Comp. Bd. of Review, 110 A.3d 1117, 1121 (Pa. Cmwlth. 2015). "The employer also must present evidence that the employee *deliberately* violated the rule." Eshbach v. Unemployment Comp. Bd. of Review, 855 A.2d 943, 947 (Pa. Cmwlth. 2004) (emphasis in original). "[T]he Board [is] the ultimate finder of fact . . . ." Peak v. Unemployment Comp. Bd. of Review, 501 A.2d 1383, 1385 (Pa. 1985). The Board "may either accept or reject a witness' testimony whether or not it is corroborated by other evidence of record." Chapman v. Unemployment Comp. Bd. of Review, 20 A.3d 603, 607 (Pa. Cmwlth. 2011). "Findings of fact are conclusive upon review provided that the record, taken as a whole, contains substantial evidence to support the findings." Id. "Substantial evidence is correctly defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Peak, 501 A.2d at 1387 (quoting Murphy v. Dep't of Pub. Welfare, 480 A.2d 382, 386 (Pa.

---

[5] Employer, as intervenor, also asserts that the Board's decision is supported by substantial evidence, and therefore binding on appeal. However, we note that it does not appear that Employer continues to assert that its policy is based on a DHS regulation.

Cmwlth. 1984)).  "This Court must examine the evidence in the light most favorable to the party who prevailed before the Board, and to give that party the benefit of all inferences that can be logically and reasonably drawn from the testimony."  Chapman, 20 A.3d at 608.

Here, the Board adopted the Referee's finding that Employer's policy "incorporate[d] by reference the [DHS regulation] that no child can be touched except to address a danger involving that child or where the child presents a danger to others."  (FOF ¶ 3.)  We first examine whether there is substantial evidence to support the finding that Employer's alleged policy existed.

Initially, we observe that the Certified Record is devoid of citation to the DHS regulation which the Referee found to be the basis of Employer's policy. Pursuant to Section 506 of what is commonly referred to as the Commonwealth Documents Law, 45 Pa. C.S. § 506,[6] we are to take judicial notice of the contents of the Pennsylvania Code.  Although we were unable to locate any regulation which prevents daycare personnel from touching children except in cases of emergency,[7] we did locate a DHS regulation relating to daycare centers which states that "[i]nfants and toddlers shall be provided stimulation by being held, rocked, talked to, played with and carried."  55 Pa. Code § 3270.112.  Because Employer cares for children ages 18 months through sixth grade, (Hr'g Tr. at 6),

---

[6] Act of July 31, 1968, P.L. 769, as amended, 45 P.S. §§ 1102-1602; 45 Pa. C.S. §§ 501-907.  Section 506 states: "The contents of the code, of the permanent supplements thereto, and of the bulletin, shall be judicially noticed."  45 Pa. C.S. § 506.

[7] In her brief to this Court, Claimant alleges facts, which do not appear in the record, that indicate the non-existence of the DHS regulation.  However, we cannot consider facts outside the record, Pennsylvania Turnpike Commission v. Unemployment Compensation Board of Review, 991 A.2d 971, 974 (Pa. Cmwlth. 2009), and therefore, we construe this argument as a substantial evidence challenge to the finding that Employer's policy existed, and that it was based on a DHS regulation.

8

Section 3270.112 appears to apply to Employer, and so calls into question Supervisor's statement that it is pursuant to (an un-cited) DHS regulation, that Employer has "zero tolerance for anybody putting their hands on a [child] unless they're a flight risk or a danger to themselves or somebody else." (Id. at 7.) Given the evidence before us, we conclude that there is not substantial evidence to support the finding that Employer's policy is based on a DHS regulation although, as discussed below, Employer may have maintained a policy without reference to a DHS regulation.

Notwithstanding the absence of a controlling DHS regulation, it appears that all parties acknowledge that Employer maintained some manner of policy related to when, if ever, an employee may touch a child. However, the testimony regarding the substance of the policy was inconsistent. No fewer than three different accounts of the Employer's policy were offered during the hearing. Supervisor testified that Employer had "zero tolerance for anybody putting their hands on a [child] unless they're a flight risk or a danger to themselves or somebody else." (Id.) In contrast, Co-worker testified that "you absolutely cannot touch a child at any time." (Id. at 23.) For her part, Claimant stated that, at the time of the incident for which she was fired, she believed that "for the safety of the children, you have to touch the child." (Id. at 33.) It also appears that there was disagreement where Employer's policy could be found. Employer stated in its response to Claimant's Claims Form that its policy could be found "in the employee handbook which was acknowledged and signed by [Claimant]." (Employer Questionnaire at 2, R. Item 3.) However, Supervisor contradicted this statement saying "[Employer's policy is] a DHS regulation which all employees must abide by. *It's not part of our handbook*." (Hr'g Tr. at 11 (emphasis added).)

9

Furthermore, when asked by the Referee whether Employer's policy was "laying around anyplace for me to view it . . .," Co-worker responded that she did not know. (Id. at 43.) Also noteworthy in this regard, the Referee repeatedly prevented Claimant's representative from asking questions related to the location and substance of the policy. The inconsistent testimony regarding the requirements and prohibitions of the policy prevents this Court from discerning the substance of Employer's alleged policy. Even viewing the testimony in the light most favorable to Employer, we can conclude only that there was a generalized understanding among the employees that they should not touch a child except for safety reasons.

We next address whether there is substantial evidence to support the finding that Claimant was aware of Employer's policy. The Board stated that "[t]he [C]laimant testified that she understood that the employer did not permit touching a child except for safety reasons." (Board Order.) In support of this finding, the Board points, *inter alia*, to Claimant's testimony in which she agreed that "it [was her] understanding that the only time you can touch a child is for their [sic] own safety or to prevent harm to another child."[8] (Hr'g Tr. at 33.) This statement is substantial evidence of Claimant's knowledge of a restriction on her ability to touch a child. However, Claimant argues that the Referee unduly interfered with her ability to offer testimony regarding her knowledge of Employer's policy. Indeed, despite the conflicting testimony regarding the location and substance of Employer's policy, the Referee repeatedly interfered with the ability of Claimant's representative to ask questions on direct and cross examination regarding the existence of Employer's policy and Claimant's knowledge thereof. Specifically,

---

[8] We note that Claimant made this statement only *after* the Referee indicated that he had already decided that Claimant knew about the policy.

10

Claimant's representative asked Supervisor "is there a place where this zero tolerance policy is [] posted . . . [?]" (Hr'g. Tr. at 12.) After entertaining an objection from Employer's counsel, the Referee told Claimant's representative "[c]ounsel, you're done [with] this line of questioning." (Id.) Upon the urging of Employer's counsel, the Referee appeared to accept the Claims Form as dispositive proof of Claimant's knowledge of Employer's policy, stating "I'm satisfied Claimant was aware of the [Employer's alleged zero tolerance policy]." (Id. at 15.) During Claimant's case-in-chief, Claimant's representative attempted to afford Claimant an opportunity to clarify the statements on her Claims Form; however, the Referee interrupted the line of questioning, stating "We're beating a dead horse on this one." (Id. at 35.) Finally, after an exchange between Claimant's representative and Employer's counsel regarding whether Claimant knew of any restrictions on her ability to touch a child, the Referee stated "[g]entlemen, this is not a debate. I've ruled." (Id. at 44.) The conduct of the Referee could call into question the fairness of the hearing. See Lauffer v. Unemployment Comp. Bd. of Review, 434 A.2d 249, 251 (Pa. Cmwlth. 1981) (stating that a claimant is denied a full and fair hearing if the Referee "improperly refuse[s] to admit competent and material evidence"). However, Claimant did testify that she was aware generally that she could not touch a child unless there is a safety issue. (Hr'g Tr. at 33.) Because we must view all evidence in the light most favorable to Employer, we conclude that there is substantial evidence to support a finding that Claimant was generally aware of restrictions imposed by Employer's policy on her ability to touch a child.

We next address whether there is substantial evidence to support the conclusion that Claimant violated the restrictions on her ability to touch a child.

11

Here, the Board "credit[ed] the testimony of [Co-worker] that there *was no immediate safety issue* with the [C]hild . . . ." (Board Order (emphasis added).) However, the Board also adopted and incorporated all of the Referee's findings and conclusions, which created an inconsistency. The Referee found that Claimant "became concerned not only for [the Child's] safety but also for the safety of the other children . . ." and that "*[a]s a result of [C]laimant's concern*, [C]laimant grasped [the Child] around his upper arm and dragged him . . . ." (FOF ¶¶ 7-8 (emphasis added).) As previously mentioned, the Referee explained his credibility findings as follows:

> Further, claimant denies engaging in any such conduct. Claimant contends that *she merely touched [Child's] sock* in an effort to get him to move, *as she was concerned about his safety* or the safety of other children around him who could trip over him and hurt both [Child] and other children.
>
> . . . .
>
> With respect to the conduct that served as the basis for termination, the Referee *finds claimant's testimony without merit that she only touched the [C]hild's sock in an effort to move the child, given that she was concerned about the [C]hild's personal safety* and the safety of other children in the immediate surrounding area. Any discrepancy between the employer's testimony and claimant's concerning the conduct serving as the basis for termination, the Referee resolves in favor of the employer.

(Referee Decision at 3) (emphasis added). Co-worker testified on behalf of Employer that Claimant did not tell the Child to move, or verbally attempt to move the Child out of the way, that she and another co-worker were there to help transition the children into the room, and that neither the Child nor anybody else was in danger. (Hr'g Tr. at 20-24.) Any discrepancies between Claimant's and

12

Employer's testimony regarding Claimant's conduct were resolved in favor of Employer. Yet, there is a finding that Claimant was concerned for the safety of the Child and the other children which caused her to touch the Child, although discussed in the context of her discredited testimony that she only touched the Child's sock. Thus, there is an inconsistency regarding whether the Board found Claimant credible that she had a reasonable concern for the Child's safety. Because Employer's policy appears to permit an employee to touch a child when there is a safety issue, the resolution of this inconsistency is essential to resolving this case. See Eshbach, 855 A.2d at 947 (a violation which is not deliberate is not willful misconduct). We cannot resolve this conflict because "[q]uestions of credibility and the resolution of evidentiary conflicts are within the sound discretion of the Board, and are not subject to re-evaluation on judicial review." Peak, 501 A.2d at 1383 (citation omitted).

In conclusion, we find that the precise substance of Employer's policy is not supported by substantial evidence, as there is neither substantial evidence that the alleged policy was based on a DHS regulation, nor substantial evidence of the specific conduct prohibited by the alleged policy. Nevertheless, we conclude that Employer maintained a generalized understanding among employees that they were not to touch children except in cases involving the safety of a child. Although Claimant's ability to present her case-in-chief was hindered by the Referee, there is substantial evidence to support the conclusion that Claimant was aware of these general restrictions on her ability to touch children. However, we cannot determine whether Claimant willfully violated Employer's policy because the Board issued inconsistent credibility determinations regarding whether Claimant credibly and reasonably believed that the safety of the Child was at issue.

We must, therefore, remand this matter to the Board for a new decision which shall resolve its conflicting credibility determinations with regard to whether Claimant had a credible and reasonable concern for the Child when she attempted to drag him on June 25, 2015.

_____
**RENÉE COHN JUBELIRER,** Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Sarolta Z. Farkas, : 
                   Petitioner : 
                         : 
             v. :   No. 2673 C.D. 2015
                         : 
Unemployment Compensation : 
Board of Review, : 
              Respondent : 

## O R D E R

**NOW**, August 26, 2016, the Order of the Unemployment Compensation Board of Review (Board) is **VACATED**, and the matter is **REMANDED** to the Board for a new decision, which shall clarify the Board's conflicting determinations with regard to whether Sarolta Z. Farkas (Claimant) had a credible concern for the safety of the child she attempted to drag on June 25, 2015, and if so, the Board shall determine whether Claimant's concern was reasonable under the circumstances.

Jurisdiction relinquished.

_____
**RENÉE COHN JUBELIRER,** Judge