Denise ENSLE, Petitioner,

v.

## UNEMPLOYMENT COMPENSATION BOARD OF REVIEW, Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Sept. 10, 1999.
Decided Nov. 12, 1999.

Henry Leone, Erie, for petitioner.

Paul R. Jordan, Harrisburg, for respondent.

Before DOYLE, President Judge, and KELLEY, J., and NARICK, Senior Judge.

NARICK, Senior Judge.

The issue presented is whether the Unemployment Compensation Board of Review (Board) erred in granting the reconsideration petition of Reese Brothers (Employer) and denying Denise Ensle (Claimant) benefits under Section 402(b) of the Unemployment Compensation Law (Law).[1] We hold that the Board abused its discretion in granting Employer's reconsideration petition and thus reverse the order of the Board.

The facts of this case are as follows. Claimant was employed by Reese Brothers from December 9, 1997, through February 5, 1998, at a rate of $5.50 per hour. On January 5, 1998, Claimant received medical attention for stress and anxiety that Claimant attributed to her job. On February 4, 1998, Claimant's supervisor, Trisha Wise (Wise) had a conference with Claim-

[1.] Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(b).

ant concerning the proper telephoning procedure. That day Claimant asked the assistant manager if she could be transferred to the position of tape pledge verifier but was told the position was not available. On February 5, 1998, Wise again had a conference with Claimant regarding her failure to ask potential phone donors a second and third time after the potential donor turned down Claimant. Claimant admitted that she did not always follow this procedure. During the conference, Claimant became distraught and started to cry. She attempted to return to work but could not successfully complete a call. Claimant then advised Wise that she was quitting.

On February 10, 1998, Claimant applied for unemployment benefits and stated on her questionnaire that she quit her job for health reasons, specifically depression and anxiety. Employer stated in its questionnaire that Claimant abandoned her job and never mentioned any health problems. On February 20, 1998, the Job Center denied Claimant benefits under Section 402(b) of the Law because she voluntarily quit her job without necessitous and compelling reasons.

On February 24, 1998, Claimant appealed the Job Center's determination. On March 12, 1998, before the Referee, Claimant testified that she felt her job was in jeopardy as a result of the February 5, 1998 conference. Claimant also testified that she went to see Dr. Pat Williams on January 5, 1998, for her nerves, stress and anxiety and that Dr. Williams put her on medication for depression and anxiety. Claimant attributed the increased stress to her job. As part of the file, the Referee had a physician's certification that indicated Claimant suffered from "stress reactions to perceived stress at work." Wise, who handled Employer's case at the hearing, did not object to the certification. Claimant also testified that she had told her prior supervisor that, "I was under a lot of stress, and that I was very stressed out, and it was hard for me to do. I was

always worried about losing my job. . . . I was seeing my doctor, because I was very stressed out and nervous from constantly worrying about my employment." On cross-examination, Claimant admitted that she did not follow proper solicitation procedures. She also admitted she did not tell Wise at the February 5, 1998 conference that she had stress problems.

On March 12, 1998, the Referee reversed the Job Center and awarded benefits. The Referee determined that Claimant had a necessitous and compelling reason to quit because Employer was informed of her health problems and did not accommodate her. Employer appealed to the Board.

On May 28, 1998, the Board affirmed the Referee and made the following findings of fact:

4. During the course of the claimant's employment she began to experience a great amount of stress and anxiety due to her employment.

5. The Claimant particularly disliked being insulted and called names by people she called on the telephone; the claimant also disliked the fact that the employer wrote up individuals every time a mistake was made.

6. On January 5, 1998, the claimant first saw her doctor for treatment to combat the stress and anxiety she felt.

7. The claimant was diagnosed with depression and anxiety and she was given medication to treat each condition.

8. Around this time the claimant informed her immediate supervisor of her mental health condition; the claimant told her supervisor that she was very stressed out and nervous because she was always concerned about losing her job.

9. The claimant acquired a new supervisor shortly thereafter.

10. On February 4, 1998, the claimant approached the assistant manager and asked if she could be transferred to a position called a tape pledge verifier.

11. The claimant wanted the transfer because she thought it would be less stressful.

12. The claimant was told that there was no position available.

13. That same day the claimant was counseled for doing something incorrectly while on the telephone with a potential donor.

14. During the counseling session the possibility of termination was mentioned.

15. On February 5, 1998, the claimant was counseled for not asking a potential donor for a pledge a second and third time after he initially refused.

16. As part of the claimant's telemarketing script she was supposed to ask for a pledge a second and third time if the potential donor refused.

17. Once again the possibility of termination was mentioned.

18. The claimant left the meeting with her supervisor very distraught and she started crying uncontrollably.

19. The claimant tried to compose herself while on the telephone with a potential donor, however, she was not completely successful.

20. After the call the claimant approached her supervisor and stated that she was quitting her position.

21. The claimant voluntarily quit her position because of the stress and anxiety she experienced while working for the employer.

22. A position outside of telemarketing was not available to the claimant at the time she left her employment.

23. Despite counseling the claimant on multiple occasions and mentioning the possibility of termination, the employer considered the claimant to be a very good telemarketer.

Based on these facts the Board reasoned:

When an unemployment compensation claimant voluntarily terminates employment for health reasons: (1) the claim-ant must offer competent testimony that adequate health reasons existed at the time of the termination to justify the termination; (2) the claimant must have informed the employer of the health problem; and (3) the claimant must have been available for work not inimical to the claimant's health.

Based upon the above Findings of Fact, the Board concludes that the claimant has met the burden of proving that she had necessitous and compelling cause for quitting her position under Section 402(b) of the Law. The employer was aware of the claimant's medical condition and when the claimant asked for other work none was available.

By letter dated May 30, 1998, Employer's counsel requested reconsideration because "the Board should not adopt hearsay evidence as the basis for its decisions as conveyed in the decision dated May 28, 1998." The Board granted Employer's request for reconsideration on June 16, 1998 and vacated the May 28, 1998 order. The Board did not indicate any reason for granting reconsideration and did not take any additional evidence, but it made the following, new findings of fact:

3. Particularity, the claimant did not like the way people on the telephone treated her when she called asking for donations.

4. This caused the claimant some stress and anxiety for which she sought medical treatment.

5. Prior to quitting her job, however, the claimant never discussed her medical condition with her immediate supervisor or anybody else from the employer.

6. On February 4, 1998, the claimant asked the assistant manager if she could be transferred to a position called a tape pledge verifier.

7. The claimant was told that the position was not available.

8. On February 4, 1998 and February 5, 1998, the claimant was counseled for

omissions which occurred on telephone calls to potential donors.

9. The disciplinary measures were justified as the claimant was not following procedures during the telephone calls.

10. After claimant received the counseling on February 5, 1998, she left the meeting distraught.

11. She later returned to her supervisor and indicated that she was quitting.

12. The claimant quit her job because of job dissatisfaction and because she did not like being reprimanded.

13. The claimant was not advised by her physician to quit her job.

14. Continuing work was available.

The Board acknowledged that it had originally affirmed the referee's decision but now decided to reverse. The Board stated the following reason why Claimant was ineligible for benefits under Section 402(b) of the Law:

Section 402(b) of the Law provides that a claimant shall be ineligible for compensation for any week in which her unemployment is due to voluntarily leaving work without cause of a necessitous and compelling nature. Since the claimant voluntarily left her employment, the burden rests upon her to show cause of a necessitous and compelling nature for so doing.

Based upon the above facts which are supported by the credible testimony of employer's witness, the Board concludes that the claimant did not make a good faith effort to maintain the employment relationship, nor did she meet her burden of showing necessitous and compelling cause for quitting her position. Therefore, the claimant is ineligible for benefits under Section 402(b) of the Law.

Claimant appealed the decision of the Board to this Court arguing that the

Board abused its discretion when it vacated the May 28, 1998 order and issued the July 28, 1998 order. Claimant argued that the Board did not set forth its reasons for granting reconsideration, and if it granted reconsideration to address Employer's hearsay objection, it abused its discretion by allowing Employer a second time to object.

In an order dated February 16, 1999, we remanded this case back to the Board to set forth the basis upon which reconsideration of the May 28, 1998 order was granted. On May 25, 1999, the Board issued a decision and order in response to our remand order. The findings of fact and rationale for that decision are identical to the Board's May 28, 1998 decision and order. The Board added only the following general statement as its reason for granting reconsideration.

The Board granted the employer's request for reconsideration simply because after reviewing the record, in light of the employer's request for reconsideration, the Board realized that it erred in adopting the legal theory proffered by the claimant, and that the legal theory proffered by the employer was the correct one.

On July 12, 1999, this Court ordered that the parties in this case submit supplemental briefs that were to be limited to the following issue: Did the Board adopt the legal theory of Employer rather than the legal theory of Claimant after it granted Employer's request for reconsideration and reversed the Referee or did the Board revisit credibility determinations, and, if so, was that a proper basis for granting reconsideration. Having received the supplemental briefs from both parties we shall now address those issues.[2]

The first issue we must address is whether the Board, in granting the reconsideration petition of Employer, adopted

2. Our review in an unemployment compensation case is limited to a determination of whether constitutional rights were violated, errors of law were committed, or essential findings of fact were not supported by substantial evidence. *Lee Hospital v. Unemployment Compensation Board of Review,* 161 Pa. Cmwlth. 464, 637 A.2d 695 (1994)

the legal theory of Employer rather than the legal theory of Claimant or did the Board revisit factual determinations. We hold that the Board revisited the factual determinations that it originally made and based its decision on the new found facts.

First, we note that Section 402(b) of the Law did not change between May 28, 1998 and July 20, 1998 in any way that would effect the outcome in this case. Also, neither the Board nor the Employer can state any legal theory that was previously not considered by the Board. The Employer in its request for reconsideration did not argue that the Board committed any legal error other than arguing that "the Board should not adopt hearsay evidence as the basis for its decision as conveyed in the decision Dated May 28, 1998." Thus, Employer asked for the Board to reconsider the evidence, not the legal theory of the case.

Second, the Board, without taking additional evidence, made new findings of fact that were completely contrary to its original findings of facts. The Board originally found that Claimant quit her position because of the stress and anxiety she experienced while working for Employer. On reconsideration, the Board found that Claimant quit her job because of job dissatisfaction and because she did not like being reprimanded. Also, originally the Board found that Claimant notified her immediate supervisor of her medical problem and on reconsideration the Board found that Claimant never discussed her medical condition with anyone from Employer.

The Board's original findings of fact would not support its decision on reconsideration to deny Claimant benefits. Thus, the legal theory of the case did not change but the facts as found by the Board did change. Since no new evidence was presented to the Board, it must have made new credibility determinations.

Having determined that the Board granted the reconsideration petition based on revisited credibility determinations, we must now determine if that was a proper action by the Board.

Because the decision to grant or deny a request for reconsideration is a matter of administrative discretion, this Court's review of that decision is limited to determining whether the Board abused its discretion. *Georgia–Pacific Corporation v. Unemployment Compensation Board of Review*, 157 Pa.Cmwlth. 651, 630 A.2d 948 (1993). An abuse of discretion occurs if the Board's decision demonstrates evidence of bad faith, fraud, capricious action or abuse of power. *Id.* In addition, the Board's own regulations provide that it may grant a request for reconsideration and rehearing only where there is "good cause" to do so and that ruling is subject to review by this Court. 34 Pa.Code § 101.111; *Bennett v. Unemployment Compensation Board of Review*, 79 Pa. Cmwlth. 625, 470 A.2d 203 (1984). In determining whether "good cause" exists, the Board must consider whether the party requesting reconsideration has presented new evidence or changed circumstances or whether it failed to consider relevant law. *Georgia–Pacific Corporation.*

In the case at bar, Employer's request for reconsideration was on the basis that the Board's decision was allegedly based upon hearsay evidence. Employer was represented at the Referee's hearing by a supervisor and an administrative assistant. These representatives were advised of their right to be represented by legal counsel and waived that right. It is also clear that Employer had access to legal counsel as they requested that the Referee's decision be forwarded to Compliance Management Consultants and Employer was represented by counsel before both the Board and this Court.

We have consistently held that there is no good cause for reconsideration where the party requesting a change in the record had not fully protected its interests by presenting the evidentiary issue to the Referee or Board prior to its reconsidera-

tion request. *Commonwealth of Pennsylvania, Department of the Auditor General v. Unemployment Compensation Board of Review,* 86 Pa.Cmwlth. 274, 484 A.2d 829 (1984); *Bennett.* In *Flanagan v. Unemployment Compensation Board of Review,* 47 Pa.Cmwlth. 120, 407 A.2d 471 (1979), we stated that we strongly condemn an arbitrary and cavalier disregard of the procedures framed for the expeditious disposition of unemployment compensation claims, procedures which inure to the benefit of all concerned.

 In this case, we hold that any hearsay objection or question regarding credibility by Employer should have been made before May 30, 1998 when it requested reconsideration from the Board. Thus, the Board abused its discretion in granting the reconsideration petition and allowing Employer to untimely address these factual issues.

Accordingly, the Board's decision and order dated July 20, 1998 is reversed and the order dated May 28, 1998 is reinstated.

## O R D E R

AND NOW, this 12th day of November, 1999, the order of the Unemployment Compensation Board of Review in the above-captioned matter dated July 20, 1998 is reversed and the order dated May 28, 1998 is reinstated.

President Judge DOYLE dissents.