# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Steven P. Joncas, II, : 
                Petitioner : 
                : 
            v. : No. 997 C.D. 2016
                : Submitted: November 4, 2016
Unemployment Compensation Board : 
of Review, : 
                Respondent : 

BEFORE:     HONORABLE RENÉE COHN JUBELIRER, Judge
                   HONORABLE PATRICIA A. McCULLOUGH, Judge
                   HONORABLE JAMES GARDNER COLINS, Senior Judge

**OPINION NOT REPORTED**

**MEMORANDUM OPINION**
**BY JUDGE COHN JUBELIRER**          **FILED: February 1, 2017**

Steven P. Joncas, II (Claimant), proceeding pro se, petitions for review of an Order of the Unemployment Compensation (UC) Board of Review (Board) finding Claimant ineligible for benefits due to willful misconduct pursuant to Section 402(e) of the UC Law (Law).[1] Finding no errors of law, abuse of discretion, or procedural infirmities, we affirm.

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, as amended, 43 P.S. § 802(e).

## I. BACKGROUND

Claimant was employed as a full-time Security Officer with UPMC Presbyterian/Shadyside (Employer) until February 2, 2016, when he was discharged for using profane and inappropriate language in violation of Employer's progressive disciplinary policy. (Board Decision, Findings of Fact (FOF) ¶¶ 1, 2, 7.) Claimant filed for UC benefits, which were denied by the UC Service Center pursuant to Section 402(e) of the Law. Claimant, represented by counsel, appealed, and a hearing was held before a UC Referee (Referee). Claimant testified on his own behalf, and Employer presented the testimonies of Joyleene Baldonieri, Human Resources Consultant for Employer; Leo Dicesare, the Security Manager for Employer; and Donald Charley, the Assistant Vice President of Parking and Security Centers for Employer.

Ms. Baldonieri testified that Employer has a Corrective Action and Discharge Policy (Policy) that provides for a "progressive disciplinary process that starts from a verbal warning, to written, final written suspension, and then as a last resort, a discharge." (Hr'g Tr. at 8, C.R. at Item 11.) The Policy is reviewed during an employee's orientation and posted on Employer's internal computer network. (Id.) Ms. Baldonieri testified that Claimant attended orientation and had access to the internal computer network on which the Policy was stored. (Id.) According to Ms. Baldonieri, Claimant received a final written warning pursuant to the Policy on December 1, 2015. (Id.; Employer's Hr'g Ex. 2, C.R. at Item 11.) The instant incident occurred after Claimant received the December 1, 2015 final written warning, and, pursuant to the Policy, resulted in Claimant's discharge. (Hr'g Tr. at 8.)

2

Mr. Dicesare testified that he served as Claimant's manager and personally witnessed the behavior that led to Claimant's termination. (Id. at 11.) Mr. Dicesare testified that Claimant approached him and was enraged with how Employer's operations were run and the actions of other employees. (Id. at 12.) According to Mr. Dicesare, Claimant, with a "very heightened voice," made statements such as "this is f\*\*ked up, and what's the big f\*\*king deal," and pounded his fists on the desk. (Id.) Mr. Dicesare was concerned about Claimant's mental state and felt a duty to report Claimant's actions. (Id.) He testified that the only appropriate use of profanity for security officers at Employer's facilities is quoting someone else's profanity when reporting an incident to a supervisor. (Id. at 14.)

Mr. Charley testified that he is responsible for all security and parking services for Employer. (Id. at 15.) He testified that he was present when Claimant received the final written warning on December 1, 2015, and that he told Claimant at that time "that any subsequent violation of [the Policy] or performance issues could result in up to and including termination of his employment." (Id.) Mr. Charley further testified that other employees have been disciplined for using profanity in his department. (Id.)

Claimant testified as follows. The incident occurred when he saw Mr. Dicesare writing a note on a white board that another employee was going to be late. (Id. at 16.) Claimant jokingly asked Mr. Dicesare why he was noting that the other employee was arriving late when the other employee is typically late. (Id.) Mr. Dicesare responded by asking if that was true, and after a brief discussion on the other employee's conduct, the conversation ended without any use of profanity. (Id.) Claimant was not aggressive and used a normal tone of voice. (Id. at 17.)

3

Claimant is in the police academy and was, at the time of the incident, looking for other work. (Id. at 18.) Claimant assumed that the fact that he was looking for work got back to Employer and that Employer decided to push him out of his job. (Id.)

Claimant further testified that profanity is common at his workplace and that its use is not limited to quoting others when reporting an incident. (Id.) Claimant acknowledged that the use of profanity is prohibited by the Policy but understood the Policy to only prohibit such language in proximity of patients or visitors. (Id. at 20.) When asked to name others who used profanity at the workplace, Claimant could not identify any specific person because, in Claimant's view, profanity was just so common. (Id. at 19.) At no point in the disciplinary process did Claimant tell his supervisors that profanity was commonplace or that he was being treated differently than other similarly situated employees. (Id. at 21-22.)

After reviewing the evidence presented, the Referee made the following findings of fact.

1. [C]laimant was employed full-time as a Security Officer with [Employer] from April 8, 2013 through February 2, 2016 at a final rate of pay of $14.25 per hour.
2. [E]mployer has a Corrective Action and Discharge policy providing for termination from employment for future violation of any UPMC or Department policy.
3. [E]mployer Corrective Action and Discharge policy provides for corrective action for profane or inappropriate language.
4. [C]laimant was aware of [E]mployer['s] policies and the potential consequence of their violation.
5. On December 1, 2015, [E]mployer provided [C]laimant with a Final Written Warning for work Negligence or Carelessness.
6. On February 2, 2016, [C]laimant voiced dissatisfaction with his coworkers and hospital operations to the Security Manager.
7. During the above incident, [C]laimant raised his voice, pounded his fists on a desk, and used profanity with the Security Manager including "this is f**ked up" and "what's the big f**king deal".

4

(FOF ¶¶ 1-7.) Based on the above factual findings, the Referee concluded that Claimant was ineligible for UC benefits because his discharge was for reasons considered to be willful misconduct. (Board Op. at 3.) According to the Referee:

> [E]mployer provided credible testimony to demonstrate that [C]laimant was on a final written warning and subject to termination for violation of [the P]olicy. [E]mployer further provided credible testimony to demonstrate a policy prohibiting profanity or inappropriate language and [C]laimant's violation of this policy. [C]laimant denies using profanity but also argues that profanity was commonplace. [C]laimant failed to cite any specific examples when profanity was previously used in the workplace. [Mr. Dicesare] provided credible testimony that the only acceptable use of profanity was repeating language used by someone else when necessary to report an incident. Credibility on the issues is found in favor of [E]mployer['s] witness. [C]laimant's testimony is found to be self-serving and not credible. There is no evidence of record to demonstrate that [E]mployer's policies are unreasonable or to show that [C]laimant had good cause for violating the [E]mployer's policies. [C]laimant's actions are found to demonstrate a willful disregard of [E]mployer's interests rising to the level of misconduct and [C]laimant's request for UC benefits must be denied in accordance with Section 402(e) of the Law.

(Id.)

Claimant appealed to the Board, which adopted the Referee's findings and conclusions of law in their entirety in an Order issued May 9, 2016. (Board Op. at 1.) The "Board specifically discredit[ed] that the [C]laimant did not use profanity." (Board Op. at 1.) Claimant, now proceeding without the assistance of counsel, sought reconsideration by the Board arguing that the Board misinterpreted the Policy, that the Board's findings of fact were incorrect and prejudicial, and that the Board erred in concluding that Employer met its burden. (Request for

5

Reconsideration, C.R. at Item 17.) The Board denied reconsideration on June 3, 2016. Claimant timely filed this appeal from the May 9, 2016 merits order.[2]

## II. CLAIMANT'S APPEAL

On appeal, Claimant makes a variety of procedural and substantive arguments. Claimant argues: (1) that the Board abused its discretion by denying his request for reconsideration; (2) that the UC Service Center staff and Referee inaccurately recorded Claimant's statements; (3) that the Referee did not provide Claimant with an opportunity to argue that his actions were justified by good cause; (4) that the Board erred in making its credibility determination and findings of fact; (5) that Employer did not meet its burden to show willful misconduct; and (6) that the Board erred by not finding Claimant's conduct *de minimis* in nature and that Claimant was subject to disparate treatment. We will first address Claimant's arguments related to the procedural issue and then proceed to the substance of the Board's Opinion.

### A. Claimant's Procedural Arguments

We will first address Claimant's procedural arguments, starting with his contention that the Board abused its discretion by not granting reconsideration. Claimant did not appeal the Board's June 3, 2016 Order denying reconsideration, and only appealed the Board's May 9, 2016 Order. Thus, the only Order under

---

[2] This Court's scope of review is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether necessary findings of facts are supported by substantial evidence. Chapman v. Unemployment Compensation Board of Review, 20 A.3d 603, 606 n.3 (Pa. Cmwlth. 2011).

6

review is the May 9, 2016, and we cannot consider Claimant's arguments related to the Board's June 3, 2016 Order denying reconsideration.[3]

Claimant next argues that the UC Service Center staff and the Referee's staff inaccurately recorded his statements. Claimant specifically focuses on his initial interview with UC Service Center staff and argues that he does not recall making the exact statements documented in the interview notes. Claimant contends that the inaccurate notes damaged his credibility with the Referee, but does not identify any specific portion of the interview notes he finds objectionable. However, Claimant testified directly to the Referee and had the opportunity, at that time, to explain that his statements had been inaccurately recorded or to clarify his previous statements. However, he did not do so. Because Claimant did not raise these

---

[3] We note that, if Claimant had appealed the June 3, 2016 Order, we would have concluded that the Board did not abuse its discretion by denying Claimant's request for reconsideration. The Board's "decision to grant or deny a request for reconsideration is a matter of administrative discretion." Ensle v. Unemployment Comp. Bd. of Review, 740 A.2d 775, 779 (Pa. Cmwlth. 1999). As such, our review is limited to determining whether the Board abused its discretion. Id. The Board's regulations provide that it may grant reconsideration if there is "good cause" to do so. Id. (citing 34 Pa. Code § 101.111). "In determining whether 'good cause' exists, the Board must consider whether the party requesting reconsideration has presented new evidence or changed circumstances or whether it failed to consider relevant law." Id.

Claimant argues that reconsideration was warranted because his circumstances changed when he assumed pro se status. Claimant argues that he was ineffectively represented by counsel at the hearing before the Referee and in his appeal to the Board, and that he was unable to represent himself in the earlier stages in the process. In his request for reconsideration and in his brief to this Court, Claimant does not contend that reconsideration is required so that new evidence can be presented. The only new information he seeks to present is his personal perspective of the case independent of his attorney. Claimant's decision to represent himself is not the type of changed circumstances that establishes good cause for reconsideration when no new evidence is presented and the arguments made could have been made to the Referee and Board. Bushofsky v. Unemployment Comp. Bd. of Review, 626 A.2d 687, 690 (Pa. Cmwlth. 1993).

7

issues to the Referee or the Board when he had the opportunity to do so, he cannot raise them for the first time on appeal. Chapman v. Unemployment Comp. Bd. of Review, 20 A.3d 603, 611 (Pa. Cmwlth. 2011) (citing Section 703(a) of the Administrative Agency Law, 2 Pa. C.S. § 703(a)).

In his final procedural argument, Claimant contends that he was not provided with an opportunity to present evidence of good cause for his actions. Review of the record reveals no instances where Claimant was restrained from showing good cause. On the contrary, Claimant testified to the Referee that he did not use profanity in the instance alleged by Employer, and that if he did use profanity in other conversations, such use was common at the work environment. (Hr'g Tr. at 19.) It is not clear to this Court how Claimant could have shown good cause for an act he testified that he did not commit.[4]

## B.     Claimant's Challenges to the Substance of the Board's Decision

Claimant next raises a series of objections to the substance of the Board's Decision. Claimant's first challenge to the Board's Decision is that the Board's credibility determinations and findings of fact were biased against him. Nothing in the record, Claimant argues, validates the Board's decision to believe Employer's witnesses over Claimant's testimony.

"This Court's review of a decision by the Board does not permit it to reweigh the evidence or substitute its own findings for those made by the Board." Chartiers Cmty. Mental Health & Retardation Ctr. v. Unemployment Comp. Bd. of

---

[4] To the extent that Claimant's argument that profanity was common at the workplace can be construed as a good cause argument, this argument was rejected by the Board when it credited Mr. Dicesare's testimony showing that profanity was only appropriate when reporting an incident over Claimant's contrary testimony.

Review, 134 A.3d 1165, 1173 (Pa. Cmwlth. 2016). Credibility determinations are the province of the Board, "which may either accept or reject a witness' testimony whether or not it is corroborated by other evidence of record." Chapman, 20 A.3d at 607. Findings of fact made by the Board "are conclusive upon review provided that the record, taken as a whole, contains substantial evidence to support the findings." Id. In determining whether the findings of fact are supported by substantial evidence, this Court examines "the evidence in the light most favorable to the party who prevailed before the Board, and to give that party the benefit of all inferences that can be logically and reasonably drawn from the testimony." Id. Here, Claimant does not point to any specific finding not supported by substantial evidence. Instead, he asks this Court to reweigh the evidence, which we cannot do. Accordingly, we will not disturb the Board's credibility determinations and findings of fact.

While the Board is the ultimate fact finder and its findings are conclusive upon review if supported by substantial evidence, "[w]hether an employee's conduct constitutes willful misconduct is a question of law subject to this Court's review." Id. at 606. Section 402(e) of the Law provides, "[a]n employe shall be ineligible for compensation for any week . . . [i]n which his unemployment is due to his discharge or temporary suspension from work for willful misconduct connected with his work." 43 P.S. § 802(e). The Law does not define willful misconduct; however, numerous decisions of this Court have defined the term as:

> (1) the wanton and willful disregard of the employer's interests; (2) the deliberate violation of rules; (3) the disregard of standards of behavior that an employer can rightfully expect from his employee; or (4) negligence which manifests culpability, wrongful intent, evil design, or intentional and substantial disregard for the employer's interests or the employee's duties and obligations.

9

Chapman, 20 A.3d at 606-07. The employer bears the burden of proving willful misconduct. Id. at 606. Should the employer meet its burden, the burden shifts to the claimant to prove that he had good cause for his actions. Id. at 607.

Claimant contends that the Board erred in concluding that Employer met its burden to show willful misconduct. Claimant's argument in this regard rests on an incorrect understanding of willful misconduct. In his brief, Claimant treats the four-part definition of willful misconduct detailed above as four elements that must all be met and argues that Employer did not present evidence to satisfy every element. However, the use of the word "or" to separate the four parts of the definition of willful misconduct is given its normal disjunctive meaning. As such, the four-part definition above provides four *separate* examples of willful misconduct, not four necessary elements.

The Board concluded that Claimant's actions "demonstrate a willful disregard of the employer's interests rising to the level of misconduct . . . ." (Board Op. at 3.) We agree. Employer has a policy against using profanity, and the Board found that Claimant used profanity directed at his supervisor after receiving a final disciplinary warning pursuant to the Policy. Claimant does not argue, and has not presented any evidence showing, that Mr. Dicesare provoked his use of profanity. As this Court has held that "[e]ven a single instance of vulgarity addressed to and unprovoked by a supervisor may support a finding of willful misconduct," Viglino v. Unemployment Comp. Bd. of Review, 525 A.2d 450, 453 (Pa. Cmwlth. 1987), we see no error in the Board's conclusion.

Claimant argues that even if he did use profanity, it was a *de minimis* violation of the Policy, and that other employees were not terminated for similar conduct. With regard to Claimant's disparate treatment defense, "[t]he essence of

10

disparate treatment is that similarly situated people are treated differently, based upon an improper criterion." American Racing Equipment, Inc. v. Unemployment Comp. Bd. of Review, 601 A.2d 480, 482 (Pa. Cmwlth. 1991). We have explained:

> Disparate treatment is an affirmative defense by which a claimant who has engaged in willful misconduct may still receive benefits if he can make an initial showing that: (1) the employer discharged [the] claimant, but did not discharge other employees who engaged in similar conduct; (2) the claimant was similarly situated to the other employees who were not discharged; and (3) the employer discharged the claimant based upon an improper criterion.

Geisinger Health Plan v. Unemployment Comp. Bd. of Review, 964 A.2d 970, 974 (Pa. Cmwlth. 2009). The burden is on the claimant to prove the elements of a disparate treatment defense.

When asked to identify any other employees who used profanity but were treated differently, Claimant could not identify any other employees by name. (Hr'g Tr. at 17.) Instead, he testified that "every individual that I've worked with has used profanity at some point." (Id.) The Board found Claimant's testimony not credible and credited Mr. Charley's testimony that others were disciplined for using profanity. Because Claimant did not present any credible evidence showing that other employees who engaged in similar conduct were not disciplined pursuant to the Policy, he cannot avail himself of the disparate treatment defense.

Finally, Claimant argues that even if he did use profanity, such use was *de minimis*. The use of vulgar language in the workplace will generally not be considered willful misconduct if the offensive language was provoked or *de minimis*. Cundiff v. Unemployment Comp. Bd. of Review, 489 A.2d 948, 951 (Pa.

11

Cmwlth. 1985). To that end, this Court assesses whether the conduct was "reasonable under the circumstances." Id. Here, the credited evidence is that Claimant, dissatisfied with the conduct of other employees and Employer's policies, "raised his voice, pounded his fists on a desk, and used profanity with [Mr. Dicesare]." (FOF ¶¶ 6-7.) Claimant's conduct was so aggressive that Mr. Dicesare grew concerned over Claimant's mental state. (Hr'g Tr. at 12.) We agree with the Board that such behavior was not reasonable under the circumstances. This conduct was unprovoked, vulgar, and aggressive. We, therefore, affirm the Board's conclusion that Claimant's violation was not *de minimis* and that Employer met its burden of showing willful misconduct.

For the reasons stated above, the Order of the Board is affirmed.


_____
**RENÉE COHN JUBELIRER,** Judge

12

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Steven P. Joncas, II,                 :
                  Petitioner     :
                         :
            v.             :    No. 997 C.D. 2016
                         :
Unemployment Compensation Board   :
of Review,                 :
              Respondent  :

## O R D E R

NOW, February 1, 2017, the Order of the Unemployment Compensation Board of Review, entered in the above-captioned matter, is **AFFIRMED**.

_____
**RENÉE COHN JUBELIRER,** Judge