# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Timothy Booth,                          :
                Petitioner          :
                              :
          v.                          :    No. 834 C.D 2021
                              :    Submitted:  May 6, 2022
Unemployment Compensation               :
Board of Review,                        :
                Respondent         :

**BEFORE:**    **HONORABLE RENÉE COHN JUBELIRER,** President Judge
                    **HONORABLE CHRISTINE FIZZANO CANNON,** Judge
                    **HONORABLE BONNIE BRIGANCE LEADBETTER,** Senior Judge

<u>**OPINION NOT REPORTED**</u>

**MEMORANDUM OPINION BY**
**PRESIDENT JUDGE COHN JUBELIRER**      **FILED:  September 7, 2022**

Timothy Booth (Claimant), pro se, petitions for review of the July 9, 2021 Order (Reconsideration Order) of the Unemployment Compensation (UC) Board of Review (Board) that denied Claimant's request for reconsideration of its June 1, 2021 order (Merits Order).  In the Merits Order, the Board upheld a Referee's conclusion that Claimant was ineligible for benefits pursuant to Section 401(d)(1) of the UC Law (Law)[1] because he was not able and available for suitable work where he had not been medically released to perform work.  On appeal, Claimant argues that the Board erred in finding him ineligible because it was the City of Philadelphia, Philadelphia Police Department's (Employer) fault he could not return to work and that the UC authorities have intentionally acted to deprive him benefits.  Upon our

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 801(d)(1).

review of the record, the Law, the Board's Regulations, and the Reconsideration Order, which is the only order timely appealed, we discern no abuse of discretion and, therefore, affirm.

## I.    BACKGROUND

Claimant worked for Employer as a custodian until he took a paid leave of absence under the Family and Medical Leave Act[2] (FMLA) on October 4, 2019, which later turned into an unpaid leave of absence. Relevant to this claim, Claimant submitted an internet claim on October 23, 2020, reflecting that Claimant took a leave of absence from work for health reasons caused by his work; there were circumstances under which he would not be able and available for work; the leave of absence was to extend through October 3, 2021; and he was not able and available to work, even if Employer offered restricted duty work, until after he completed his treatment because it made him unable to work. (Certified Record (C.R.) at 8-9, 11-13.) Claimant reiterated his inability to perform any work in his interview with a UC representative. (*Id.* at 15.) By Notice of Determination dated January 13, 2021, a UC Service Center found Claimant ineligible for benefits because he was not able and available for work as required by Section 401(d)(1) of the Law for the week ending October 24, 2020. (*Id.* at 18.)

Claimant appealed, asserting that Employer was aware of his medical condition and leave of absence, his work caused his health issues, and he was entitled to UC benefits.[3] A Referee held a telephonic hearing on March 16, 2021, at which

---

[2] 29 U.S.C. §§ 2601, 2611-2620, 2631-2636, 2651-2654.

[3] Claimant attached to his appeal various documents and information regarding the alleged theft of his identity, which appears to have been used to file a different claim for UC benefits. These documents were not admitted into the record as they did not relate to whether Claimant was able and available for work. (*See* C.R. at 38-40, 100.)

only Claimant appeared, without counsel. Claimant testified and submitted documents, including his FMLA application, his request for leave to Employer, notes from his visits to Employer's Employee Assistance Program, and physicians' notes regarding Claimant's ongoing treatment and, in some instances, removing him from work. (*Id.* at 68-77.) Claimant testified[4] regarding his leave of absence under the FMLA, which expired in January of 2020, and that he was on an unpaid leave of absence through June 2, 2021. Claimant acknowledged that he had not been medically released to work and related this lack of release to Employer's not offering light-duty work. However, Claimant agreed that he had not asked Employer for a specific accommodation. According to Claimant, the medications he was using made him unable to return to work, but once he was medically cleared, he would be able to return to work.

The Referee made the following findings of fact:

1. The [C]laimant began a leave of absence under the . . . FMLA[] from a position as custodian with the [Employer] on or shortly after October 4, 2019.

2. The [C]laimant's treating doctor wrote on the FMLA forms that the [C]laimant had [a variety of health issues] but that the [C]laimant was not "unable to perform any of his job functions due to the condition[s]"; despite this entry, the [E]mployer approved FMLA leave a[n]d, when [this leave was] exhausted, allowed the [C]laimant to remain on an unpaid leave of absence through some time in June of 2021.

3. The [C]laimant did not request an accommodation or change in working conditions at any point after he began his leave of absence.

4. On January 6, 2021, the [C]laimant's treating psychiatrist opined that the [C]laimant "is unable to return to work at this time."

---

[4] Claimant's testimony is found at pages 94-102 of the Certified Record.

3

5. The [C]laimant established an application for [UC] effective October 18, 2020[,] at which time he stated he was unable to work and unavailable for work due to medication side effects.

(Referee's Decision,[5] Findings of Fact (FOF) ¶¶ 1-5.) The Referee explained that Section 401(d)(1) required Claimant to prove that he be able and available to work for each week he sought UC benefits. According to the Referee, Claimant did not establish that any of his treating physicians had released him to return to work, and while Claimant indicated Employer would not make accommodations, Claimant had not offered evidence of his medical release or that he had made himself available for work, at least through January 6, 2021, the date of Claimant's last medical visit. Therefore, the Referee found Claimant ineligible for benefits under Section 401(d)(1) for the weeks ending October 24, 2020, through January 9, 2021.

Claimant appealed to the Board, arguing Employer's physicians had to clear him before he could return to work and had not done so, and attached additional documentation he believed supported his claim for UC benefits. (C.R. at 113-16.) Upon its review of the record, the Board concluded the Referee's Decision was in accordance with the Law, adopted those findings of fact, as modified, and conclusions of law, and affirmed.[6] The Board responded to Claimant's specific arguments as follows:

> On appeal, the [C]laimant argues that the "[Employer] has to clear me to work before they let me work," and that he was declared "unfit to [perform] my job by several medical doctors." The [C]laimant also makes assertions and refers to documents which the Board cannot consider as they are not a part of the record. However, the [C]laimant acknowledged that he has not been medically cleared to return to work. The [C]laimant also indicated that he is unable to work due to his medical issues. As such, the [C]laimant has not met his burden of

---

[5] The Referee's Decision is found at pages 105-09 of the Certified Record.

[6] The Board's Order is found at pages 122-24 of the Certified Record.

4

> proving that he is able and available for suitable work. Therefore, he is ineligible for benefits under Section 401(d)(1) of the Law.

(Board's Order (third alteration in the original).) Finally, the Board emphasized that the disqualification under Section 401(d)(1) was a week-by-week determination and, if Claimant became able and available for work, he was to advise the UC Service Center.

Claimant asked the Board "for further consideration of my appeal," submitting additional medical documentation to support his conditions, asserting reasons why the Board should not have found him ineligible, comparing his situation to a variety of other illnesses, and referencing a workers' compensation claim. (C.R. at 131-37.) The Board treated Claimant's filings as an application to reconsider its Merits Order. On July 9, 2021, the Board denied reconsideration and indicated that its Merits Order had become final on June 1, 2021.

On July 16, 2021, Claimant filed with this Court a pro se letter, followed by an ancillary petition for review, to which Claimant attached numerous documents. The Board filed an application to quash that petition for review and to strike many of those documents. This Court denied the application to strike without prejudice and denied the request to quash the appeal because the Petition for Review was a timely appeal of the July 9, 2021 Reconsideration Order. After the certification of the record and the filing of Claimant's Amended Brief, the Board filed an application to strike documents attached to the Petition for Review and Claimant's brief as being outside the record. This Court granted this application in part on January 26, 2022, and struck certain documents in exhibits 1, 8, 9, 10, 11, and 14 to the Petition for Review, and certain documents in appendices 1, 3, 4, 7, and 8 to Claimant's Amended Brief.

5

## II. PARTIES' ARGUMENTS

On appeal, Claimant argues that he is entitled to benefits because his being out of work is Employer's fault and that the UC authorities have taken intentional steps to deprive him of UC benefits, for which he was initially approved, despite his paying into the system for 17 years. On the first point, Claimant argues that he would have been able and available to return to work but it was Employer who refused to allow his return by not offering Claimant light-duty work or an accommodation. Claimant further asserts that the Board should have considered whether he could work for other employers. Therefore, Claimant argues the Board erred in concluding there was an ability and availability to work issue that disqualified him from receiving benefits. On the second point, Claimant asserts, citing extra-record material, that the UC authorities kept changing the reasoning behind his disqualification and did not submit all of his records as a means of preventing him from receiving benefits.[7]

The Board responds that it did not abuse its discretion in denying reconsideration, which is the only issue before the Court, where Claimant did not establish good cause for granting reconsideration. The Board argues that, in his reconsideration request, Claimant asked the Board to consider evidence not introduced before the Referee without showing that this evidence was new, could not have been submitted at the hearing, or would change the result given that there was no dispute as to the existence and cause of Claimant's medical conditions. (Board's Brief (Br.) at 6, 9-10.) The Board contends that, consistent with his testimony at the hearing, Claimant admitted in his reconsideration request that he

---

[7] Claimant's arguments on page six of his brief relate to documents that he asserts the Board failed to provide the Court, which he has attached to his brief. Per this Court's January 26, 2022 order, these documents were stricken from the brief.

6

was not able to work at all due to his medical conditions, which is disqualifying under Section 401(d)(1) and distinguishes this matter from *Harwood v. Unemployment Compensation Board of Review*, 531 A.2d 823 (Pa. Cmwlth. 1987), where the claimant said he was ready and able to work another position. Further, the Board asserts, Claimant did not argue that it misapplied the Law in finding him ineligible for benefits. As these are the bases for finding "good cause" to support the grant of reconsideration under Section 101.111 of the Board's Regulations, 34 Pa. Code § 101.111, the Board maintains it did not abuse its discretion in denying Claimant's request. Further, while Claimant argues that the Board is going to great lengths to deny him benefits, the Board maintains that there is no basis in the record to support a finding of bad faith and points out the main document Claimant relies upon, a financial eligibility determination that the Board had not included in the certified record, is not relevant to the question of eligibility under Section 401(d)(1). (Board's Br. at 10 n.4.)

## III. DISCUSSION

While Claimant's arguments focus on the merits of the Board's finding him ineligible, we are mindful that the only Board order before the Court on appeal is the Reconsideration Order. However, before setting forth the standard for reviewing such orders, it is helpful to understand Section 401(d)(1) and what is required under that provision to establish eligibility for benefits.

Section 401(d)(1) of the Law states that "[c]ompensation shall be payable to any employe who is or becomes unemployed, and who" "[i]s **able to work** and **available for suitable work**[.]" 43 P.S. § 801(d)(1) (emphasis added). It is the claimant who bears the burden of establishing their ability and availability for work. *Craig v. Unemployment Comp. Bd. of Rev.*, 442 A.2d 400, 401 (Pa. Cmwlth. 1982).

7

To be eligible for UC benefits, "a claimant must be ready, willing and **able** to accept either temporary or permanent suitable employment at any time . . . and be actually and currently attached to the labor force." *Id.* at 402 (emphasis added). Our Supreme Court has explained that "since it was **not the intent of the [Law] to provide** health and disability **benefits for an ill employee who is not physically able** and available for participation in the work force," "it must [] appear that the employee **is able to work** and be available for suitable work." *Genetin v. Unemployment Comp. Bd. of Rev.*, 451 A.2d 1353, 1355 (Pa. 1982) (emphasis added). Whether a claimant meets these requirements "is a question of fact for the Board" to decide and will be affirmed if the Board's finding is supported by evidence. *Craig*, 442 A.2d at 401.

An employee's taking a leave of absence is not a bar to being able and available for work where the claimant establishes that the claimant is actually attached to the work force and can perform some type of work, even if it is not the same position or with the same employer. *Harwood*, 531 A.2d at 825-26. In *Harwood*, we held that a claimant was able and available for work under Section 401(d)(1) where the claimant had requested to return to work at the same employer at a different position, the claimant was actively looking for work elsewhere, and there was no evidence that the claimant was unavailable for work. *Id.*

Here, the Board found that **Claimant acknowledged** that he had not been medically cleared to work and was **unable to work** due to his medical conditions. (Board's Order.) Based on these admissions, the Board held that Claimant had not met his burden of proving that he was able and available for suitable work. Claimant sought reconsideration of that determination, the Board denied reconsideration, and we review that denial now.

8

"[T]he decision to grant or deny a request for reconsideration is a matter of administrative discretion," and, therefore, the Court reviews that decision for an abuse of discretion. *Georgia-Pacific Corp. v. Unemployment Comp. Bd. of Rev.*, 630 A.2d 948, 951 (Pa. Cmwlth. 1993). "An abuse of discretion occurs if the agency decision demonstrates evidence of bad faith, fraud, capricious action or abuse of power." *Id.*

Section 101.111 of the Board's Regulations provides that

(a) Within 15 days after the issuance of the decision of the Board . . . any aggrieved party may request the Board to reconsider its decision and if allowed, to grant further the opportunity to do the following:

(1) Offer additional evidence at another hearing.

(2) Submit written or oral argument.

(3) Request the Board to reconsider the previously established record of evidence.

(b) The requests will be granted only for good cause in the interest of justice without prejudice to any party. The parties will be notified of the ruling of the Board on each such request. The request for reconsideration and the ruling of the Board shall be made a part of the record and subject to review in connection with any further appeal to the Commonwealth Court.

34 Pa. Code § 101.111. "In determining whether 'good cause' exists, the Board must consider whether the party requesting reconsideration has presented new evidence or changed circumstances or whether it failed to consider relevant law." *Ensle v. Unemployment Comp. Bd. of Rev.*, 740 A.2d 775, 779 (Pa. Cmwlth. 1999). We have held, however, that there is "no good cause to grant rehearing where the requesting party did not act to protect its own interests by presenting crucial evidence at the initial hearing and asserted no reason for its failure to make the 'new' evidence

9

available at that time." *Georgia-Pacific Corp.*, 630 A.2d at 953. In short, the evidence being presented as "new" must not have been available during the initial hearing.

Reviewing Claimant's reconsideration request, we discern no abuse of discretion in the Board's denying that request. Claimant's arguments in that request challenged Employer's requirement that he be medically cleared to return to work; cautioned what could happen if he returned to work without such clearance because his UC benefits were being wrongfully denied; pointed out that he was forced to use FMLA leave while his injured on duty application was being completed; maintained that he "should not be denied [UC] benefits because [he was] getting treatment **along with not being cleared or fit to return back to work**"; compared his situation to employees with COVID who could return to work without clearance but receive UC benefits; inquired whether he was being denied UC benefits so that he would file for Social Security benefits; referenced the work-related nature of his medical conditions and a workers' compensation case; and cited the theft of his identity which was used by someone else to try to collect UC benefits. (C.R. at 131-33 (emphasis added).) None of these arguments claim that the Board failed to consider relevant law or that circumstances had changed such that reconsideration was warranted. Thus, they are insufficient to support a finding of good cause for granting reconsideration. *Ensle*, 740 A.2d at 779.

Additionally, Claimant indicated that he had "medical documentation to verify [his] conditions" and attached that documentation, as well as other documents, for the Board to review. (C.R. at 131.) Absent from the reconsideration request was anything reflecting that these materials had been unavailable at the time of the Referee's hearing; thus, they could not be considered "new" evidence for purposes

10

of reconsideration. *Georgia-Pacific Corp.*, 630 A.2d at 953. Further, there was no explanation as to how these materials, even if considered, would change the result, particularly where there were no findings of fact that disputed Claimant's medical conditions or the asserted work-related nature of those conditions. Accordingly, they are insufficient to support a finding of good cause for granting reconsideration. *Id.*

Finally, Claimant ended the reconsideration request with the question, "[d]oesn't having several medical diagnos[e]s saying that [he was] **not able to work** because of [his] ailment mean anything[?]" (C.R. at 133, 145 (emphasis added).) He further emailed inquiring about the status of his reconsideration request stating, relevantly, that both Employer's doctors and his "primary care doctor . . . say I am **not medically fit to return back to work**." (*Id.* at 136 (emphasis added).) As these statements support the Board's determination that Claimant was **not able** to work, they do not reflect that the Board erred in finding him ineligible for benefits under Section 401(d)(1), and *Genetin*, 451 A.2d at 1355 ("it was not the intent of the [Law] to provide health and disability benefits for an ill employee who is not physically able and available for participation in the work force"), or support a finding of good cause to grant reconsideration.

Although Claimant asserts in his brief that his inability to return to work is Employer's fault, the brief also includes statements indicating that Claimant's current medical providers have not released him to work, state that he needs more time to recover, and will not provide him with a note to return to work. (Claimant's Am. Br. at 12-15, 17.) These statements are consistent with those made in Claimant's initial filings with the UC authorities, the evidence he presented at the hearing, his statements in his appeal to the Board, and his statements in the

11

reconsideration request and associated documents, all of which reflect that Claimant had not been released to work, cannot work while being treated for and recovering from his medical conditions, and was not able and available for work. (C.R. at 8, 11-13, 15, 98, 101, 114, 116, 136.) Thus, the evidence presented would not have supported Claimant's current assertion that he was able to work, either for Employer or another employer.

As for Claimant's arguments that the Board or UC authorities are intentionally depriving him of benefits, our review of the record does not reveal any evidence of bias, arbitrariness, or capriciousness in the denial of the reconsideration request. Although Claimant asserts that he should be eligible for benefits under these facts, the Law sets forth the eligibility requirements and specifically requires that individuals be able and available to work, 43 P.S. § 801(d)(1), which Claimant's evidence did not establish. The Board's denial of reconsideration based on the arguments and admissions Claimant made in the reconsideration request does not reflect bias, arbitrariness, or capriciousness, but its application of the requirements of the Law and the Board's Regulations. Further, to the extent Claimant relies on the extra-record determination that found him to be financially eligible for benefits, even if such determination was considered, financial eligibility is just one requirement for receiving UC benefits. *See* 43 P.S. § 801 (setting forth all of the requirements needed to receive UC benefits, which include not only financial eligibility, but also a valid application for benefits and being able and available for suitable work). Thus, even if Claimant met the financial eligibility requirements, he still had to meet the other requirements to receive benefits.

12

## IV. CONCLUSION

We understand Claimant's position that he should receive UC benefits from the system into which he has paid. Unfortunately, the Law is clear that to be eligible to receive those benefits, the employee must be able and available to perform suitable employment, 43 P.S. § 801(d)(1). In short, UC benefits do not provide financial assistance for an individual who is not medically able to work. Based on the evidence Claimant presented and the admissions made in the reconsideration request, which acknowledged that he was not medically cleared to work and was not able to work, we cannot say the Board abused its discretion in denying Claimant's reconsideration request.[8] Accordingly, the Board's Reconsideration Order is affirmed.

_____
**RENÉE COHN JUBELIRER,** President Judge

---

[8] However, we note, as the Board did, that disqualification under Section 401(d)(1) is a week-by-week determination. Thus, if Claimant does obtain evidence reflecting his ability to return to some kind of work, he should reapply for benefits.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Timothy Booth,                :
              Petitioner     :
              :
       v.             :    No. 834 C.D 2021
              :
Unemployment Compensation     :
Board of Review,             :
            Respondent    :

# **O R D E R**

**NOW**, September 7, 2022, the July 9, 2021 Order of the Unemployment Compensation Board of Review, entered in the above-captioned matter, is **AFFIRMED**.

 

 

_____

**RENÉE COHN JUBELIRER,** President Judge