# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Vital Support Home Health | : | |
| Care Agency, Inc., | : | |
| Petitioner | : | |
| | : | |
| v. | : | No. 415 C.D. 2016 |
| | : | SUBMITTED: September 30, 2016 |
| Unemployment Compensation | : | |
| Board of Review, | : | |
| Respondent | : | |

BEFORE:    HONORABLE ROBERT SIMPSON, **Judge**
                   HONORABLE PATRICIA A. McCULLOUGH, **Judge**
                   HONORABLE BONNIE BRIGANCE LEADBETTER, **Senior Judge**

## OPINION NOT REPORTED

**MEMORANDUM OPINION BY**
**SENIOR JUDGE LEADBETTER**                   **FILED:  February 24, 2017**

Employer, Vital Support Home Health Care Agency, Inc., petitions for review of an order of the Unemployment Compensation Board of Review that reversed a referee's decision denying Claimant Jeniffer Santiago unemployment compensation benefits under Section 402(b) of the Unemployment Compensation Law (Law).[1] Section 402(b) provides that an employee is ineligible for benefits during any week "[i]n which his [or her] unemployment is due to voluntarily leaving work without cause of a necessitous and compelling nature." We affirm.

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(b).

The facts as found by the Board are as follows. Claimant worked as a full-time home health aide for Employer at an hourly rate of $10 from July 2014 to February 2015. Board's March 8, 2016, Decision, Finding of Fact (F.F.) No. 1. During that time period, Claimant had a steady schedule with the same client and her husband was the primary caretaker of their three children. *Id.*, Nos. 3 and 4. On February 8, 2015, however, that client moved to Ohio and no longer required Claimant's services. *Id.*, No. 2. Although Employer offered Claimant more work thereafter, it advised her that the work would be on an on-call basis and that it could provide her with approximately only "an hour of advance notice that she would have to work that day and that notice could come at any time during the day." *Id.*, No. 6. This presented a problem for Claimant because, approximately two weeks before she resigned, her husband secured a job working the night shift from 10:00 p.m. to 6:00 a.m. *Id.*, No. 5. Although she attempted to find someone who could provide childcare on such short notice, she was unable to do so. *Id.*, No. 7. In addition, even though she asked Employer for a steady schedule for purposes of arranging childcare, Employer could not provide her with such a schedule. *Id.*, No. 8. Accordingly, Claimant voluntarily quit due to childcare issues. *Id.*, No. 9.

Subsequently, Claimant applied for unemployment compensation benefits, which the UC Service Center denied. Before the referee, Claimant, with counsel and an interpreter, presented testimony in support of her position. Employer, also with counsel, presented the testimony of two witnesses: office coordinator Ms. Francheska Jimenez and office manager Ms. Vitaliya Gerasimenko. The referee affirmed the ineligibility determination, (1) accepting Employer's position that, after her previous client moved, it provided Claimant

2

with permanent work and had a great deal of work available for her; and (2) concluding that Claimant failed to bring her "childcare issues to Employer's attention to try to work out a schedule that she could handle[,]" and, therefore, failed to exhaust all reasonable alternatives. Referee's November 12, 2015, Decision at 3; Reproduced Record (R.R.) at 76a. The Board reversed, (1) accepting Claimant's testimony that Employer advised her that it could offer her work only on an on-call basis and that she would have only about an hour to find childcare; and (2) rejecting the testimony of Employer's witness that it offered her a steady schedule. Board's March 8, 2016, Decision at 2. Employer's timely petition for review followed.

Pursuant to Section 504 of the Law,[2] the Board may reverse a referee's determination without taking new evidence. As the ultimate finder of fact, it is within the Board's purview to resolve all conflicts in evidence and to determine witness credibility and evidentiary weight. *Peak v. Unemployment Comp. Bd. of Review*, 501 A.2d 1383, 1389 (Pa. 1985); *Chapman v. Unemployment Comp. Bd. of Review*, 20 A.3d 603, 608 (Pa. Cmwlth. 2011). It is, therefore, irrelevant that a record contains evidence to support findings other than those made by the fact-finder; the critical inquiry is whether there is evidence to support the actual findings. *Chapman*, 20 A.3d at 609. In that regard, the facts as found by the Board are conclusive on appeal as long as the record, in its entirety, contains substantial evidence to support those findings. *Id.* at 608. "Substantial evidence is relevant evidence that a reasonable mind might consider adequate to support a conclusion." *Popoleo v. Unemployment Comp. Bd. of Review*, 777 A.2d 1252, 1255 (Pa. Cmwlth. 2001).

---

[2] 43 P.S. § 824.

Moreover, where a voluntary termination is at issue, the claimant bears the burden of proving necessitous and compelling cause for leaving his or her job.[3] *Brunswick Hotel & Conference Ctr., LLC v. Unemployment Comp. Bd. of Review*, 906 A.2d 657 (Pa. Cmwlth. 2006). In order to show such cause, the claimant must establish that: "(1) circumstances existed which produced real and substantial pressure to terminate employment; (2) such circumstances would compel a reasonable person to act in the same manner; (3) the claimant acted with ordinary common sense; and, (4) the claimant made a reasonable effort to preserve [his or] her employment." *Id*. at 660. The inability to find childcare on short notice, with communication to the employer, may constitute a necessitous and compelling cause for voluntarily terminating employment. *Truitt v. Unemployment Comp. Bd. of Review*, 589 A.2d 208, 210 (Pa. 1991); *Blakely v. Unemployment Comp. Bd. of Review*, 464 A.2d 695, 696 (Pa. Cmwlth. 1983). However, generally in order to justify quitting based on lack of childcare, a claimant must establish that he or she exhausted all other alternative childcare arrangements before voluntarily terminating employment. *Beachem v. Unemployment Comp. Bd. of Review*, 760 A.2d 68, 72 (Pa. Cmwlth. 2000).

In the present case, Employer argues that the Board made fact-findings that were against the weight of the testimony and evidence presented at the hearing and, therefore, improperly ignored the facts found by the referee. Specifically, Employer maintains that there is no substantial evidence to support the Board's finding that Claimant asked Employer for a steady schedule for

---

[3] A determination of whether necessitous and compelling cause for leaving employment exists is a question of law, subject to plenary review by this Court. *Johnson v. Unemployment Comp. Bd. of Review*, 869 A.2d 1095 (Pa. Cmwlth. 2005).

4

purposes of arranging childcare but that it could not provide her with such a schedule. Employer asserts that, to the contrary, the evidence supports a determination that it provided Claimant with a steady schedule after her client moved and that it had additional clients with steady schedules that it could have provided to her. Employer's position is without merit.

Contrary to the testimony of Employer's witnesses, Claimant testified several times that she advised Employer of her childcare issues and need for a steady schedule. Claimant's testimony, which the Board credited, is as follows:

> [Claimant's attorney] CL: Did you talk with Vital about this problem that you had with childcare?
>
> [Claimant] C: Yes.
>
> CL: And did you ask them for some sort of accommodation that would help you?
>
> C: Yes.
>
> CL: What did you ask? What did you ask them for?
>
> C: I asked them to give me a steady schedule.
>
> CL: Okay. And how would a steady schedule have helped you?
>
> C: Well, with a steady schedule, I could find somebody to help me with my kids.
>
> CL: Okay.
>
> C: Did you explain to whoever you were talking to that it was your family situation with the children that made it difficult for you to start on such short notice?
>
> C: Correct.
>
> [Referee]: Who did you tell?
>
> C: Well, the people that used to call me; they were several different people. And I also communicated this to *Evelyn* [as per Claimant, Evelyn sat at the front desk and acted as coordinator]. She was the person that I had more, the most communication with.
>
> . . . .

5

CL: . . . Do you remember speaking with Ms. Jimenez about your work with Vital?

C: I don't remember spoken [sic] to her because on the phone they don't identify themselves.

CL: Okay. So it's -- and I'm talking about February of 2015, after your client left, it's possible that you spoke with her on the phone?

C: Yes, it is possible.

CL: And when you spoke with every single person that you spoke to on the phone, did you raise this issue of childcare?

C: Correct.

CL: Okay. But you are aware that you specifically spoke with somebody named Beatrice (sic) in this time period? Actually, not -- *Evelyn*? So you are certain that you spoke with her during this time period, *Evelyn*?

C: Yes.

November 10, 2015, Hearing, Notes of Testimony (N.T.) at 12 and 38; R.R. at 39a and 65a (emphasis added).

In addition, the Board accepted Claimant's testimony that, when she advised Employer after her client moved that she wanted to continue working, Evelyn advised her that she had to be on-call with advance notice of only an hour before start time. *Id.* at 9-10; R.R. at 36-37a. In that regard, the Board also accepted Claimant's testimony that she attempted to make alternate childcare arrangements but was unable to find someone who would be available on such short notice. Board's March 8, 2016, Decision at 2. Specifically, Claimant testified that she had no family in the area, that she contacted several neighbors and people that she knew and trusted, and that commercial childcare centers were too expensive. November 10, 2015, Hearing, N.T. at 11-12, 14-15, and 17-18; R.R. at 38-39a, 41-42a, and 44-45a. *See Truitt*, 589 A.2d at 210 (holding that, after a reasonable person exhausts alternatives for available childcare on short notice,

6

"[t]here is nothing more that we can or should ask of an employee before that employee terminates his or her employment.").

In rejecting Employer's assertions, we conclude that they are tantamount to an improper credibility challenge and not a substantial evidence challenge. In any event, we note that while Ms. Jimenez asserted that she herself was the *only* employee who spoke directly with Claimant regarding the relevant issues and had no idea that Evelyn's testimony would be necessary, Ms. Jimenez at the same time admitted that, (1) Claimant could have spoken to Evelyn; (2) Employer kept a computerized record of all of the conversations that it had with its employees from which it easily could have printed out a call log for Claimant; and (3) Employer neglected to bring such a log to the hearing. November 10, 2015, Hearing, N.T. at 35-37 and 39; R.R. at 62-64a and 66a. It was for the Board, as the ultimate fact-finder, to resolve the conflicting testimony and to weigh the evidence. In addition, where, as here, Claimant prevailed, we are bound to view the evidence, and every reasonable inference deducible therefrom, in the light most favorable to her as the prevailing party. *Chapman*, 20 A.3d at 607.

Accordingly, we affirm the Board's grant of benefits.

_____
**BONNIE BRIGANCE LEADBETTER,**
Senior Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Vital Support Home Health      :
Care Agency, Inc.,      :
     :
     Petitioner      :
     :
     v.      :    No. 415 C.D. 2016
     :
Unemployment Compensation      :
Board of Review,      :
     Respondent      :

# **O R D E R**

AND NOW, this 24th day of February, 2017, order of the Unemployment Compensation Board of Review is hereby AFFIRMED.

 

_____
**BONNIE BRIGANCE LEADBETTER,**
Senior Judge